## Etter, Appellant, *v.* McAfee.

*Public officers—Elections—State treasurer—Vacancy—Duration of appointment.*

A state treasurer appointed by the governor in April, 1910, holds his office until his successor shall be elected at the general election in the year 1912, inasmuch as the amendment of 1909 provides for an election to this office in 1912, and not in the intervening years, and art. IV, sec. 8, of the constitution expressly provides that in case of a vacancy in an elective office "a person shall be chosen to said office on the next election day appropriate to said office according to the provisions of this constitution."

Argued Oct. 17, 1910. Appeal, No. 3, May T., 1911, by plaintiff, from decree of C. P. Dauphin Co., Equity Docket No. 455, dismissing bill in equity in case of George E. Etter v. Robert McAfee, Secretary of the Commonwealth of Pennsylvania, Isaac S. Hoffman, Samuel S. Miller and W. W. Wallower, County Commissioners, and D. Frank Lebo, Commissioners' Clerk of the County of Dauphin, and J. Rowe Fletcher, Sheriff of the County of Dauphin. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to restrain the secretary of the commonwealth from certifying the names of the candidates for

state treasurer to the county commissioners, and that the county commissioners of Dauphin county be restrained from printing the names of the candidates for state treasurer on the ballot or sending the names to the sheriff, and that the sheriff be restrained from advertising or making proclamation of an election for state treasurer.

The defendants demurred to the bill.

The court sustained the demurrer and dismissed the bill.

*Error assigned* was decree dismissing the bill.

*Alex. Simpson, Jr.*, of *Simpson & Brown*, for appellant, cited: Com. ex rel. v. Sheatz, 228 Pa. 301; Sharpless v. Philadelphia, 21 Pa. 147; Page v. Allen, 58 Pa. 338; Keller v. Scranton, 200 Pa. 130.

*Henry Budd* and *James A. Stranahan*, for Cornelius Scully, a candidate.

*M. Hampton Todd*, attorney general, with him *William M. Hargest*, assistant deputy attorney general, and *J. E. B. Cunningham*, deputy attorney general, for appellee, cited: People v. Brenham, 3 Cal. 477; Smith v. Bryan, 100 Va. 199 (40 S. E. Repr. 652); State of Oregon ex rel. v. Johns, 3 Oregon, 533; Shelley v. McCullough, 97 Ky. 164 (30 S. W. Repr. 193); Brooke v. Com. ex rel., 86 Pa. 163.

PER CURIAM, October 19, 1910:

The determination of the question involved in this appeal depends upon how long the state treasurer appointed by the governor in April, 1910, to fill the vacancy caused by the death of Jeremiah A. Stober, before he qualified, shall hold his office by virtue of such appointment. Mr. Stober was elected at the general election in 1909 for a term of three years beginning the first Monday of May, 1910, and ending the first Monday of May, 1913. He

died before his term of office began without having quali-
fied, thus creating a vacancy which the governor had the
power to fill and did fill by appointment; see Com. v.
Sheatz, 228 Pa. 301. The present incumbent holds under
that appointment, and the question for determination is,
For what length of time does he so hold? If his successor
is to be elected this year he can only hold until the suc-
cessor so elected qualifies, but if he holds until a successor
elected in 1912 qualifies, as the constitution provides,
there is no vacancy at present to be filled. Both con-
tentions are made and the correct answer must be found
in the amendments to the constitution adopted in 1909.
By these amendments the provisions of the constitution
of 1874 requiring biennial elections of state treasurers
have been abrogated and are no longer in force. The
same may be said of the acts of assembly relating to
biennial elections of such officers. The constitutional pro-
visions requiring the election of a state treasurer every
two years and the statutes relating to such biennial elec-
tions no longer being in force it necessarily follows that
there is no lawful authority for the election of a state
treasurer in 1910 unless that authority is to be found in
the amendments adopted in 1909. The amendment to
art. IV, sec. 21, provides as follows: "but a state treasurer,
elected in the year one thousand nine hundred and nine
shall serve for three years, and his successor shall be
elected at the general election in the year one thousand
nine hundred and twelve, and in every fourth year there-
after." It is clear that if Mr. Stober had lived, the first
election of a successor that could have been held would
have been at the general election in 1912. It is so pro-
vided by the express language of the constitution and there
can be no doubt of the plain meaning of the words used.
There is no provision for an election in 1910 or in 1911,
but as to the election of a state treasurer it is expressly
provided that the successor of the person elected in 1909
shall be elected at the general election of 1912. We must,
therefore, inquire whether there are any other provisions

of the constitution as amended by virtue of which these express provisions as to the election of state treasurers may be disregarded, and an election to fill a vacancy in such office be held in 1910. The contention made and sustained in the court below was that such a situation arose by reason of the limitations upon the power of the governor to fill vacancies under art. IV, sec. 8. This section confers upon the governor the power to fill vacancies and among other things provides: "but in any such case of vacancy, in an elective office, a person shall be chosen to said office on the next election day appropriate to such office according to the provisions of this constitution." It will be noticed that the governor is given the power to fill vacancies in the office of state treasurer and that the successor to a person so appointed shall be chosen by a vote of the people "on the next election day appropriate to such office according to the provisions of this constitution." We think it is clear that the plain words of the constitution fix the general election in 1912 as "the next election day appropriate to such office according to the provisions of this constitution." It is not for the courts to say that the people did not mean what is so plainly said in the amendment to the constitution which by their votes was adopted in 1909. By that amendment they wrote into the organic law the positive mandate that the first election of a state treasurer for the full term of four years should be held in 1912 and they did not provide for an election to fill vacancies occurring prior to that time. The expression of one thing in the constitution necessarily excludes things not expressed: Page *v.* Allen, 58 Pa. 338. Another amendment did confer upon the governor the power to fill vacancies by appointment, which power he has exercised in the present case, and the vacancy has thus been filled in the only manner authorized by the constitution. How long does the appointee of the governor hold the office to which he was appointed? The constitution as amended answers this question. He holds until the time fixed by law for the

qualification of his successor. It is provided that his successor shall be chosen "on the next election day appropriate to such office according to the provisions of this constitution." As to the office of state treasurer the first election day provided for is in the year 1912 and hence the election to be held in that year is the appropriate election within the meaning of that section of the constitution which gives the governor the power to appoint. According to the provisions of "this constitution" there is no election day for the office of state treasurer in the year 1910, but there is the positive mandate for an election in 1912. Surely that election day is appropriate which the people fixed as the appropriate day for such an election when they adopted the amendment to our organic law. Such a construction gives effect to every word and part of the constitution and to do this is a cardinal rule of constitutional construction. Any other construction would strike down the positive mandate of the constitution requiring the election of a state treasurer in 1912 and every four years thereafter and would read into it by way of inference provisions not contained in the fundamental law. There is no necessity for such a construction and we are of opinion that the safe and proper rule is to give the words used their plain and popular meaning. If it be said that this denies to the people their right to elect a state treasurer in 1910, as is contended, the answer is that the people themselves by the adoption of the amendment fixed the year in which the next election of a state treasurer shall be held. It was their right to do so and having exercised that right we are bound by what they themselves did. We therefore hold that under the provisions of the constitution no election can be had for the office of state treasurer until 1912 and that the appointee of the governor holds under his appointment until the time fixed by law for the qualification of a successor elected at that time.

Decree reversed, bill reinstated, and injunction directed to issue as prayed for. Costs to be paid by appellee.