# Commonwealth ex rel., Appellant, *v.* McAfee.

*Constitutional law—Judges—Election law—Constitution of Pennsylvania, art. IV, sec. 8, art. V, sec. 15—Constitutional amendment of 1909 —Schedule of constitutional amendment of 1909—Acts of April 30, 1874, P. L. 118, and March 2, 1911—" Vacancy."*

1. Under art. V, sec. 15, of the constitution, the Act of April 30, 1874, P. L. 118, and the constitutional amendment of 1909 with its schedule, an election cannot be held in November, 1911, to fill the office of a judge of the court of common pleas or orphans' court whose term expires on January 1, 1913.

2. The second section of the act of March 2, 1911, which provides that "all judges of the courts of the several Judicial Districts, Associate Judges and County officers holding office at the date of the approval of said amendments, whose commissions expire on the first Monday of January in an odd-numbered year, shall continue to hold their offices

until the first Monday of January in the following even-numbered year," is unconstitutional, inasmuch as it is an attempt to extend the constitutional terms of judges beyond the limit fixed by the constitution.

3. Where a judicial term ends on the first Monday of January, 1913, a vacancy will exist which must be filled by the governor under art. IV, sec. 8, of the constitution.

4. The suggestion that judges whose terms expire in odd-numbered years shall have successors elected at the municipal election which will occur fourteen months before the expiration of their respective terms is open to the constitutional objection that it will lead to a classification which would destroy uniformity in the election of the common pleas judges by dividing such judges into two groups, the members of one to be elected fourteen months, and of the other two months, before the expiration of the terms of their predecessors. Such a classification is not a natural one, nor is it one made imperatively necessary by existing conditions.

5. The word "vacancy" as applied to an office has no technical meaning. An existing office without an incumbent is vacant. There is no basis for the distinction that it applies only to an office vacated by death, resignation or otherwise. It may be applied to an office when it is first created, and has been filled by no incumbent; and a vacancy may exist by reason of the expiration of the term.

Mr. Chief Justice Fell and Mr. Justice Brown dissent.

Argued April 24, 1911. Appeal, No. 10, May T., 1911, by plaintiff, from order of C. P. Dauphin Co., Commonwealth Docket, 1911, No. 16, dismissing petition for mandamus in case of Commonwealth ex rel. Norris S. Barratt v. Robert McAfee, Secretary of the Commonwealth of Pennsylvania. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Petition for mandamus.

Kunkel, P. J., and McCarrell, J., filed the following opinion:

This cause has been submitted to us without argument, with the suggestion that we shall enter a judgment pro forma, so that the question may be speedily and authoritatively settled by the Supreme Court. However, we prefer to state our reasons for our judgment.

The relator is a judge of the court of common pleas,

No. 2, of Philadelphia, in the first judicial district of Pennsylvania. He was duly elected for the constitutional term of ten years, commencing on the first Monday of January, 1903, and ending on the first Monday of January, 1913.

By the constitutional amendment of November 2, 1909, the election of judges can take place only in odd-numbered years. The act of April 30, 1874, provides that the term of judges "shall commence on the first Monday of January next succeeding their election." The relator contends that as the year immediately preceding the termination of his term, is an even-numbered year, in which no election for the office of judge can lawfully be held, the appropriate time for the election of his successor is in the present year, 1911, and he accordingly filed a petition for the printing of his name upon the ballot for the June primary, 1911, with the secretary of the commonwealth, requesting him to certify his name for printing upon the primary ballot. The secretary of the commonwealth has refused to so certify and the relator now asks that he be directed to comply with his request.

Upon the presentation of the relator's petition the respondent made answer, waiving issuance of the alternative writ, admitting all the facts alleged in the petition and claiming that his refusal to certify relator's name, as requested, is entirely legal. The question, therefore, is one of law.

The constitutional and statutory provisions relative to the subject are as follows:

1. Article V, sec. 15, of the constitution: "All judges required to be learned in the law, except the judges of the Supreme Court, shall be elected by the qualified electors of the respective districts over which they are to preside, and shall hold their offices for the period of ten years, if they shall so long behave themselves well."

2. Act of April 30, 1874, P. L. 118: "That the term of office of judge of the Supreme Court and other judges learned in the law hereafter elected shall commence on

the first Monday of January next succeeding their election, and they shall be commissioned accordingly."

3. Constitutional amendment of article VIII, sec. 3, adopted November 2, 1909: "All elections for judges of the courts of the several judicial districts . . . . shall be held on the municipal election day, namely, the Tuesday next following the first Monday of November in each odd-numbered year, but the General Assembly may by law fix a different time, two-thirds of all the members of each House consenting thereto; Provided, That such election shall always be held in an odd-numbered year."

4. Article IV, sec. 8, of the constitution: "He (the Governor) shall nominate, and, by and with the advice and consent of two-thirds of all the members of the Senate, appoint a secretary of the commonwealth and an attorney general during pleasure, a Superintendent of Public Instruction for four years, and such other officers of the Commonwealth as he is or may be authorized by the Constitution or by law to appoint; he shall have power to fill all vacancies that may happen, in offices to which he may appoint, during the recess of the Senate, by granting commissions which shall expire at the end of their next session; he shall have power to fill any vacancy that may happen, during the recess of the Senate, in the office of Auditor General, State Treasurer, Secretary of Internal Affairs or Superintendent of Public Instruction, in a judicial office, or in any other elective office which he is or may be authorized to fill; if the vacancy shall happen during the session of the Senate, the Governor shall nominate to the Senate, before their final adjournment, a proper person to fill said vacancy; but in any such case of vacancy, in an elective office, a person shall be chosen to said office on the next election day appropriate to such office according to the provisions of this Constitution, unless the vacancy shall happen within two calendar months immediately preceding such election, in which case the election for said office shall be held on the second succeeding election day appropriate to such office."

5. Schedule to constitutional amendment of November 2, 1909: "All judges for the courts of the several Judicial Districts . . . . holding office at the date of the approval of these amendments, whose term of office may end in the year 1911, shall continue to hold their offices until the first Monday of January, 1912."

6. Act of March 2, 1911, in its second section, provides as follows: "All Judges of the courts of the several Judicial Districts, Associate Judges and County officers holding office at the date of the approval of said amendments, whose commissions expire on the first Monday of January in an odd-numbered year, shall continue to hold their offices until the first Monday of January in the following even-numbered year."

This second section of the act of March 2, 1911, just quoted, is an attempt to extend the constitutional terms of judges beyond the limit fixed by the constitution and is therefore of no validity for that purpose: Commonwealth v. Sheatz, 228 Pa. 301.

The question to be determined is, Can the successor of a judge whose term ends on the first Monday in January, 1913, be lawfully elected at the November election 1911?.

The present contention arises solely from the operation of the constitutional amendment limiting judicial elections to odd-numbered years. Several theories are suggested for the adjustment of conditions to this limitation. One is that the act of April 30, 1874, has either been entirely repealed by the amendment of the constitution in 1909, or has been so modified thereby, when the term ends in January of an odd-numbered year, as to permit an election in November of the last preceding odd-numbered year.

The Act of April 30, 1874, P. L. 118, provides that the terms of all judges learned in the law "shall commence on the first Monday of January next succeeding their election." There is no language in the amendment limiting the election to odd-numbered years which indicates any intention to either repeal or modify the act of 1874, fixing the

commencement of judicial terms. The relator's term continues until the first Monday of January, 1913. To permit the election of his successor in 1911, nearly fourteen months before the commencement of the official term, would be in disregard of the provisions of this statute and would be without precedent in Pennsylvania so far as we are advised. To so hold would result in confusion and uncertainty, because if after the election of a successor to the relator in 1911, the relator should die or resign a vacancy would be created, which would be filled by executive appointment and that would be followed by another election. It is within the limits of possibility that some person other than the relator might be elected in November, 1911, and then in the event of the death or resignation of the relator before the end of his present term, the vacancy would be filled by executive appointment until the first Monday in January, 1914, followed by an election in 1913. Thus we would have the situation of the governor's appointee in office until the first Monday in January, 1914, with the successful candidate at the election of November, 1911, claiming the right to the office on the first Monday of January, 1913. The same undesirable situation might likewise arise as to the judicial terms expiring in 1915, 1917 and 1919. Surely a conclusion leading to such complicated and confusing results ought, if possible, to be avoided.

Another theory is that the schedule to the amendments of 1909, providing that judges whose terms expire in the year 1911, "shall continue to hold their offices until the first Monday of January, 1912," is to be construed as inferentially extending all judicial terms expiring in January of odd-numbered years to the first Monday of January in the next succeeding even-numbered year. We have no power to read into the schedule to the amendments of 1909 the extension of any judicial terms. The schedule only extends terms expiring in 1911. We must assume that the people did not intend to extend any other terms else they would have so specifically stated. The

expression of one thing in the constitution necessarily excludes things not expressed: Page v. Allen, 58 Pa. 338; Etter v. McAfee, 229 Pa. 315.

In our opinion there is ample provision in the constitution itself for the adjustment of the present conditions to the limitation of judicial elections to odd-numbered years. If an election cannot legally be held in November in the year immediately preceding the termination of a judicial term on the first Monday of January of any odd-numbered year, a vacancy will exist which can be filled by executive appointment under art. IV, sec. 8, of the constitution, supra, and this appointment will necessarily be followed by an election either on the first or second succeeding election day appropriate to the office, that is, in November of the first or second succeeding odd-numbered year. Thus without any new statutory enactment, or strained construction of any existing constitutional or statutory provision the new constitutional limitation of judicial elections can be put into successful operation. It is quite unnecessary to seek for some method other than that which the people have expressly provided in their fundamental law to meet the results caused by the adoption of the late constitutional amendments. Especially is this so when the conclusive inference is, from the schedule extending terms expiring in 1911 to the first Monday in January, 1912, that the people purposely omitted to extend other judicial terms, but left them to the operation of the provisions of the constitution itself.

We conclude that ample remedy for the present situation is provided by art. IV, sec. 8, of the constitution.

For these considerations thus hastily and perhaps imperfectly stated, we are of opinion that the relator is not entitled to the relief sought by his petition and the same is now dismissed at his costs.

*Error assigned* was the order of the court.

*John G. Johnson,* for appellant.

*D. T. Watson* and *John C. Bell,* attorney general, with them *Ernest C. Irwin,* for appellee.

Opinion by Mr. Justice Moschzisker, May 17, 1911:

The objection to the act of March 2, 1911, is that it extends for the period of one year the terms of all judges whose commissions expire on the first Monday of January in odd-numbered years. In Com. v. Sheatz, 228 Pa. 301, referring to a term fixed by the constitution, we said, "The term of office fixed by the constitution is expressly limited to a definite number of years, and it is not within the power of the legislature, directly or indirectly, to extend it beyond the prescribed period. . . . There is an implied prohibition against the right of the legislature to add to the term where the constitution has expressly prescribed the duration of the tenure. . . . It is not within the power of the legislature to . . . . extend the term of the office and prevent a vacancy. . . . Holding over . . . . is not a new or another term but a prolongation of the elected incumbent's term. . . ." Article 5, sec. 15, of the constitution provides that all common pleas judges shall hold their offices for the period of ten years. The schedule adopted by the people to put into effect the amendments of 1909 declares: "All judges for the courts of the several judicial districts . . . . holding office at the date of the approval of these amendments . . . . whose term of office may end in the year 1911, shall continue to hold their offices until the first Monday of January, 1912." This schedule is a temporary part of the constitution. "It is only when the constitution fails to deal with a subject that the general assembly may legislate upon it:" Com. v. Sheatz, supra. Here, the constitution has dealt with the subject in hand so far as the judiciary is concerned, and the act of 1911 attempts to add provisions to the schedule upon the very matter covered therein. It may be that the draftsman of the schedule thought that he had provided against every contingency, but the words used cannot be construed to mean, that from 1911 on ad

libitum the terms of all judges whose commissions might expire in an odd-numbered year shall be extended for a period of twelve months. If such was the idea it should have been expressed. While the maxim expressio unius est exclusio alterius cannot be applied so as to deprive the legislature of distinct powers not limited or taken away by the constitution itself, yet it is properly applicable in the construction of any particular part of the constitution as limiting the legislative power over the subject therein provided for. In Page v. Allen, 58 Pa. 338, with this thought in mind, we said, "The expression of one thing in the Constitution, is necessarily the exclusion of things not expressed;" and in Etter v. McAfee, 229 Pa. 315, we applied the maxim in construing the amendment of 1909 to the effect that the first election of a state treasurer for the full term of four years should be held in 1912, and we there ruled that the provision excluded a construction which would permit an election before that time. The schedule adopted in 1909 having expressly dealt with the matter, but having omitted to extend the terms of judges other than those whose commissions expired in the year 1911, the legislature, in the face of the constitutional provision definitely fixing such terms and the implied prohibition against their extension, cannot supplement the schedule in violation of such prohibition, even as a temporary expedient. Hence, the act of 1911, so far as it concerns the terms of the judges, is unconstitutional and void.

The suggestion that the difficulty can be solved by holding that the judges whose terms expire in odd-numbered years shall have successors elected at the municipal election which will occur fourteen months before the expiration of their respective terms, is likewise open to constitutional objections. Article V, sec. 26, of the constitution provides that, "All laws relating to Courts shall be general and of uniform operation." Classification must not only rest upon a plain distinction in the subjects classified, but it must always have a substantial reason back of it amount-

ing to more than a mere convenience.   The suggested solution leads to a classification which will destroy uniformity in the election of the common pleas judges, and its effect is permanently to divide such judges into two groups, the members of one to be elected fourteen months, and of the other two months, before the expiration of the terms of their predecessors.   The arrangement would be contrary to the long-established public policy of our state which allows but a short time to intervene between an election and the assumption of office.   This policy has strong practical reasons back of it, particularly in the case of a judge elected from the bar, who, after being set apart for judicial work, should not be obliged or permitted, during such a considerable period, to practice his profession for a livelihood.   However, these practical reasons would not. constitute insurmountable objections if the proposed classification were a natural one, or one made imperatively necessary by existing conditions.   In other words, if the amendments of 1909 left the matter in such a position that the only alternative was to accept the classification, and there was nothing in the constitution plainly forbidding it, then, ipso facto, the classification and its effect would be there, and the general assembly could enact proper legislation with reference to it, or, possibly, it might be of sufficient force to annul prior legislation in conflict therewith, such as the Act of April 30, 1874, P. L. 118, which provides that the terms of office of all judges shall commence on the first Monday of January next succeeding their election.   But the division is not a natural one; heretofore the only classification of judges known to our law has been founded upon differences in the work performed.   The question remains, is it a necessary one; for under all our cases a new classification will not be permitted unless there is an apparent reasonable necessity to support it.   A classification, for the purpose of applying a different rule or remedy as between persons in the same general category, cannot be held to be necessary, or permissible, if the situation impelling it is already provided for

in our organic law; and the learned court below has held such to be the case in the present instance, taking the view that the non-elections of successors will create vacancies which it will be the right and duty of the governor to fill. If the constitution gives the governor the power to fill such a vacancy as is here under consideration, since the people failed to say so in words or by necessary implication, we cannot assume that they intended by the amendments of 1909 to change the established rule regarding the time for the election of any of the judges; on the contrary, we must assume that they anticipated the natural legal consequences of their omission to provide for the contingency before us, and that they intended the creation of vacancies and the exercise of the executive prerogative to fill them by interval appointments. The question is, Does the constitutional provision vesting the governor with the right to fill vacancies apply to the condition which will arise in the event of the expiration of the term of the relator without the prior election of a successor? The proper determination of this case depends upon the answer to that question.

After looking at the matter from every standpoint, we are brought to the conclusion that the view of the court below is the correct one, and that the question must be answered in the affirmative. Article IV, sec. 8, of the constitution as amended in 1909, provides, "He (the Governor) . . . . shall have power to fill any vacancy that may happen . . . . in a judicial office . . . . But . . . . a person shall be chosen to said office on the next election day appropriate to such office. . . ." The constitution expressly gives to the people the right to choose judges by election, and it gives to the chief executive the right to fill vacancies. This latter right exists whether the vacancy occurs during a term for which an incumbent has been elected or at the expiration thereof, if there is no one to fill the office. The non-election of a successor, whether it be through a neglect of the people or a failure of the law to afford a proper opportunity, creates a vacancy. "The

word 'vacancy' as applied to an office has no technical meaning. . . . An existing office without an incumbent is vacant. . . . There is no basis for the distinction that it applies only to an office vacated by death, resignation, or otherwise:" 8 Words & Phrases, 7259. Fortunately we are not without our own construction of this word. An interesting dissertation on its meaning will be found in Walsh v. Com., 89 Pa. 419. There a new county had been erected. The act provided that, "The Governor was required immediately to appoint and commission the officers for the new County, who should continue in office until the next general election," and, at such election, "the qualified electors shall elect" county officers. The then constitutional provision was that the governor might "fill any vacancy that may happen . . . . in any elective office. . . . But . . . . a person shall be chosen to said office at the next general election, unless the vacancy shall happen within three calendar months immediately preceding such general election, in which case the election for such office shall be held at the next succeeding general election." The governor appointed Walsh less than three months before the date of the "next general election," and the relator was elected to the same office at that election. "He contended that the design of the Legislature . . . . was to bridge over the interval between the creation of the County and the next election, by directing the Governor to appoint the new officers;" and "He relied on the second section of the fourteenth article of the Constitution, requiring that 'all vacancies not otherwise provided for, shall be filled in such manner as may be provided by law' . . . ." We held that, "the word 'vacancy' aptly and fitly describes an office when it is first created and has been filled by no incumbent," that the law had created a vacancy in the office in question within the meaning of the section of the constitution which vested the governor with the right to fill vacancies, that the governor derived his right of appointment from the constitution irrespective of the statute, that this

constitutional right could not be abridged or interfered with by the legislature, that the statute would have to be construed with reference to the constitution, that it was not to be supposed that the legislature intended to run counter to the organic law even to bridge over the interval between the erection of the county and the next general election, and that the governor's appointee would hold the office until the qualification of a successor elected at the second general election. The meaning of the word "vacancy" was again under consideration in Com. v. Dickert, 195 Pa. 234, and it was there ruled that in case of a failure to elect a successor to the incumbent of the office in question "a vacancy exists by reason of the expiration of the term." In Com. v. Sheatz, 228 Pa. 301, the state treasurer elect died before qualifying, and at the expiration of the term of the incumbent there was no one to fill the office. We held that there was a vacancy and that the governor had the right to appoint. By the light of these cases, the learned court below was right in the view that the inevitable effect of the amendments of 1909 will be to cause the offices of all common pleas judges whose terms expire on the first Monday of January in odd-numbered years to become vacant, and that it will be for the governor to appoint incumbents to serve until successors are chosen by the people at the next appropriate election.

The argument that the solution arrived at will postpone the popular choice is of no avail against constitutional provisions adopted by the people themselves: Walsh v. Com., supra; Etter v. McAfee, supra; nor is the objection that it will make some of the judges appointive and others elective sound in law, for limited interval appointments to elective offices have always been part of our system, and none of these appointments will be for more than one year. The solution works no permanent division in the ranks of the judges, as the situation when thus dealt with is but a temporary one which will cease to exist after the expiration of the term of the last of the present incumbents

in 1919. In the meantime the positions of thirty-nine of the 131 judges of the commonwealth may be affected, unless the people by another amendment should extend their terms or provide that judges can be elected in any year.

The people may have supposed that the schedule of 1909 comprehended all possible contingencies and made all necessary provisions to carry the constitutional changes into effect without disturbing their right to elect immediate successors to the judges then in office. But the difficulty is, if such was their intention, they failed to say it, or so to express themselves that the legislature, without violence to other fixed constitutional mandates, could carry out their wishes in that respect. In construing any part of the constitution we are not at liberty to disregard other applicable provisions, or to supply words omitted, in order to work out a thought which the people themselves had the opportunity to give expression to had they so desired, nor can we ignore the authority of our own prior decisions. We must take the law as we find it, and we are constrained to hold that the relator's term cannot be extended by act of assembly; further, that his successor cannot be lawfully elected in the year 1911. To permit either would disregard constitutional inhibitions and read that into the organic law which cannot be found therein; while to follow the rule laid down by the learned court below, is to conform to the constitution as it is written and as it has been heretofore construed by this court. It neither takes from nor adds to the constitution, but simply accepts a remedy there supplied in plain and, under our decisions, unambiguous language.

The assignment of error is overruled and the judgment of the court below is affirmed.

Mr. Chief Justice Fell, dissenting:

The term of office of the relator as a judge of a court of common pleas will expire on the first Monday of January, 1913. His successor in office cannot be elected in 1912. The question raised by this appeal is whether he should

be elected in 1911, or in 1913. The constitutional and statutory provisions relating to the subject are these: (a) art. V, sec. 15, of the constitution of 1874 provides that: "All Judges required to be learned in the law, except the judges of the Supreme Court, shall be elected by the qualified electors of the respective districts over which they are to preside and shall hold their offices for the period of ten years." (b) The Act of April 30, 1874, P. L. 118, fixing the time when the terms of judges shall commence, provides: "That the term of office of Judges of the Supreme Court and other Judges learned in the law hereafter elected shall commence on the first Monday of January next succeeding their election." (c) The constitutional amendment adopted in 1909 provides: "All elections for Judges of the courts of the several Judicial Districts . . . . shall be held on the municipal election days, namely, the Tuesday next following the first Monday of November in each odd-numbered year, but the General Assembly may by law fix a different time, two-thirds of all the members of each House consenting thereto; Provided, That such election shall always be held in an odd-numbered year." (d) To avoid inconvenience in carrying into operation the amendment of 1909, the schedule provides: "All judges of the courts of the several judicial districts . . . . holding office at the date of the approval of these amendments whose term of office may end in the year 1911, shall continue to hold their offices until the first Monday of January 1912." (e) On March 2, 1911, an act was passed that provides that: "All Judges of the courts of the several judicial districts . . . . holding office at the date of the approval of said amendments, whose commissions expire on the first Monday of January in an odd-numbered year, shall continue to hold their offices until the first Monday of January in the following even-numbered year." (f) The constitution of 1874 empowers the governor to fill vacancies in judicial offices "happening by death, resignation or otherwise" by appointment to continue until the first Monday of January next succeeding the first general

election that should occur three or more months after the happening of such vacancy. One of the amendments adopted in 1909 changes the period for which an appointment shall be made, by extending it until a successor shall be chosen "on the next election day appropriate to such office" according to the amendment making the election in odd-numbered years.

The learned judges of the common pleas in dismissing the petition for a writ of mandamus held that the act of 1874 is unrepealed and unmodified by the amendment of 1909 and that its provision fixing the commencement of judges' terms "on the first Monday of January next succeeding their election" prevents an election in 1911; that the schedule to the amendments of 1909 did not by implication extend judicial terms; that the act of March 2, 1911, was an attempt to extend the terms of judges beyond the limits fixed by the constitution and is therefore invalid. Their conclusion was that an election cannot, under the amendment, be held in 1911, and that on the first Monday of January, 1913, a vacancy will exist which must be filled by the governor. This conclusion is accepted as correct by the majority of my brethren, but I cannot agree with them.

The situation with which we have to deal may be the result of an oversight; but this is by no means clear, for the words of the amendment have but one meaning, and the people deliberately adopted it. The constitution provides that all judges of the courts of common pleas shall be elected for a term of ten years, but nothing in the amendment changes this by the remotest implication. Judges are still to be elected for a term of ten years, and the amendment merely provides that all of them must be elected in odd-numbered years. This means that the election for judges shall hereafter be biennial. The framer of the amendment of 1909, knew that if it should be adopted it would go into effect immediately upon its adoption, and, therefore, there could be no election of judges in 1910, and vacancies would exist in some districts

for the period of one year, 1911. In view of this the schedule consistently provided that all judges holding office at the date of the adoption of the amendment whose term would end in the year 1911, should continue to hold office for one year longer. As there could not have been by the terms of the amendment, an election for judges in 1910, and the first election of them would occur in 1911, the terms of those expiring in January, 1911, were extended one year. This is as far as the schedule goes, and nothing could be plainer than the expressed intention of the people that after the first Monday of January, 1911, all judges must be elected in odd-numbered years and each for a term of ten years.

But if we assume there was an oversight in limiting the extension of terms to those that would end in 1911 and in not applying it to all terms that would end in odd-numbered years, it does not follow that there will be a vacancy. If an adequate provision exists for the election of a successor in each case whose term will commence with the expiration of the term of his predecessor, there will be no vacancy. This provision is found by reading together, as we should, the amendment and the act of 1874. The amendment requires an election in an odd-numbered year, the act provides that the term of office shall commence on the first Monday of January next succeeding the election. When judges could be elected at any annual election, the appropriate time to elect was in November of the year immediately preceding the end of their terms. Now that they are to be elected biennially only, and in odd-numbered years, the appropriate time to elect is in November of the odd-numbered year, nearest the end of their terms. This will give effect to both the constitutional and statutory provisions and to the declared purpose of the people that judges shall be elected by them and that appointments to the office of judge shall be limited to the filling of vacancies happening by death, resignation or otherwise during the term for which a judge was elected. The act of 1874 must yield to the

constitution in so far as it is inconsistent with the latter. The amendments are self-operating and no legislation is needed to give them effect. To sustain the decree of the common pleas will make more than one-third of the judges of the commonwealth appointive for a period of years. It is inconceivable that there was an intention to divide the judiciary of the state into classes by establishing a system making a part elective and a part appointive.

That there are practical objections to the election of a judge fourteen months before the beginning of his term of office is of course to be conceded, but the people have so willed, and it is not for courts to set their will aside. Their intent, as expressed in the amendment, is free from all ambiguity, and I can see no justification for the substitution by implication of a different intent, not suggested by a word in the amendment. Unwise legislation is bad enough, but worse than it is its attempted correction by the courts. One is wrong in practice; the other is radically wrong in principle. It is not for courts to say what the law should be but what it is and to leave its correction to those on whom that duty devolves.

BROWN, J., concurs in this dissent.