368 A.2d 721

Alexander F. BARBIERI, Court Administrator of Pennsylvania, and William F. Cercone, Judge of the Superior Court of Pennsylvania, Petitioners,

v.

Milton J. SHAPP, Governor of the Commonwealth of Pennsylvania, and C. DeLores Tucker, Secretary of the Commonwealth.

Supreme Court of Pennsylvania.

Argued Oct. 12, 1976.

Decided Jan. 25, 1977.

464

William H. Eckert, Pittsburgh, for Alexander F. Barbieri et al.

Vincent X. Yakowicz, Sol. Gen., Com. of Pa., Harrisburg, for Milton J. Shapp et al.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

This is a Petition for Review of a governmental determination filed pursuant to the new Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1501 *et seq.* At issue is the possible extension, for one year, of the judicial term of office of William F. Cercone, Judge of the Superior Court of Pennsylvania. Our resolution of this question will determine the time in which Judge Cercone may file his declaration of candidacy for retention pursuant to Article V, Section 15(b), of the Pennsylvania Constitution and set the date on which he must run, if he should choose to do so, for retention election.

Judge Cercone was duly elected to the office of Judge of the Superior Court of Pennsylvania on November 5, 1968, and was inducted into office on the first Monday of January 1969 (January 6, 1969). He has been serving as a Judge of the Superior Court since that time. Article V, Section 15(a), of the Pennsylvania Constitution provides in part that "[t]he regular term of office of justices and judges shall be ten years . . ." and were it not for a change wrought by the new Judiciary Article, Article V of the Pennsylvania Constitution, adopted in 1968, Judge Cercone could run for reelection in 1978 for a term commencing on the first Monday of January 1979. Section 13(a) of the new Judiciary Article, however, affected the election process by requiring that all judges be elected at municipal elections which, pursuant to Article VII, Section 3, of the Pennsylvania Constitution, are strictly held in odd-numbered years. For judges who were elected previously in even-numbered years this constitutional change created problems which were recognized by the framers of the new Judiciary Article. To allow for a smooth transition from the former to the present judicial system, Section 2 of the Schedule to Article V provides for the extension of judgeships which would naturally "expire on the first Monday of January in an odd-numbered year" to "the even-numbered year next following." Thus, a judge elected under the old Constitution may comply with the Constitution and run for retention election "at the *municipal election* immediately preceding the expiration of the term of office . . . ." Pa.Const. art. 5, § 15(b) (emphasis supplied).

We must decide whether Section 2 of the Schedule to Article V applies to petitioner, Judge Cercone. Judge Cercone believes that it does so apply and wrote to petitioner, Judge Alexander F. Barbieri, Court Administrator of Pennsylvania, on June 9, 1976, asking Judge Barbieri to obtain for him from respondents, Milton J.

Shapp, Governor of the Commonwealth of Pennsylvania,[1] and C. DeLores Tucker, Secretary of the Commonwealth,[2] a new and corrected commission as a Judge of the Superior Court continuing in effect until the first Monday of January 1980. On June 23, 1976, Judge Barbieri joined in this request and forwarded a copy of Judge Cercone's letter to the respondents. By letter dated July 9, 1976, and on the advice of the Attorney General, Governor Shapp refused to amend the commission in the absence of a definitive decision on the question presented by the courts. This Petition for Review was then filed in the Commonwealth Court, which had jurisdiction to hear the petition.[3] Because we deemed the issue presented to be of immediate public importance, we granted the parties' Joint Application to Assume Plenary Jurisdiction.[4]

When the framers of the revised Article V met in convention they intended that the Schedule to that Article would serve as a bridge between the old and new judicial systems:

"The Convention is empowered to include in its recommendations those provisions which it deems essential to provide against difficulty in moving from one system to another. The transfer from a prevailing judicial order into a new one is quite likely to involve grave problems of compensation, *election, tenure,* jurisdiction, the transfer of powers etc., and unless provision is made in advance for the elimination of such

1. Article IV, Section 19, provides in pertinent part:
   "All commissions shall be in the name and by authority of the Commonwealth of Pennsylvania, and be sealed with the State seal and signed by the Governor."

2. The Secretary of the Commonwealth has the power and duty, under the law, to "prepare and issue, with the approval of the Governor," commissions to elected officers of the Commonwealth of Pennsylvania. Act of April 9, 1929, P.L. 177, art. VIII, § 809, 71 P.S. § 279.

3. Act of July 31, 1970, P.L. 673, art. IV, § 401(a)(1), 17 P.S. § 211.401(a)(1).

4. Act of July 31, 1970, P.L. 673, art. II, § 205, 17 P.S. § 211.205.

problems, confusion, uncertainty and inconvenience may result.

The traditional means for disposing of problems of this nature is a provision or series of provisions called the 'Schedule' which makes all necessary adjustments in the movement from one condition to another . . . ." The Pennsylvania Constitutional Convention 1967–68, Reference Manual No. 5, p. 7 (emphasis supplied).

The Schedule, as adopted, was expressly given "the same force and effect" as the provisions of Article V (see Pa. Const. art. 5, Schedule), and it included a section which authorizes the adjustment of judicial terms of Superior Court judges:

"The *present* terms of all judges of the Superior Court which would otherwise expire on the first Monday of January in an odd-numbered year shall be extended to expire in the even-numbered year next following." Pa.Const. art. 5, Schedule, § 2 (emphasis supplied)

Because the effective date of the article and schedule was January 1, 1969,[5] five days before the induction of Judge Cercone, respondents contend that his term is arguably not a "present" term subject to extension. We conclude otherwise for the reasons stated below.

The word "present" is defined by the Schedule: "where the word 'present' appears it speaks *from* the effective date hereof." Pa.Const. art. 5, Schedule (emphasis supplied). Webster's Third New International Dictionary gives as the first meaning of the word "from," "to indicate a starting point." Thus, when the word "present" is used in the Schedule, it speaks from January 1, 1969, continuing thereafter so long as the Schedule remains in effect. As it is used in Section 2, the word "present" is not confined to terms of Superior Court judges which existed or were in effect on the single day

5.  *See* Pa.Const. art. 5, Schedule.

of January 1, 1969, but includes, as well, terms which commenced after the effective date of the new Constitution.

We believe our construction of the Schedule provisions is the only fair and reasonable one. It comports with the clear intent of the framers to eliminate the chaos and confusion which would otherwise result in the transition from the old judicial system to a new system requiring all judges to be elected at municipal elections held in odd-numbered years. It would contravene Article V, § 13(a), and Article VII, § 3, of the Pennsylvania Constitution to conduct the retention election in the even-numbered year of 1978.[6] Running for retention in the municipal election of 1977 is an equally untenable solution. Retention of Judge Cercone in 1977 would apply to a term commencing some fourteen months later in January of 1979. This extended hiatus between election and assumption of office is contrary to the public policy of Pennsylvania. *Commonwealth ex rel. Barratt v. Mc-Afee*, 232 Pa. 36, 45, 81 A. 85, 88 (1911). Either solution, in addition, would perpetuate a continuing divergence from the constitutional requirement that terms of judges of the Superior Court commence in even-numbered years. We choose, instead, to further the intentions of the framers and construe the constitutional provisions so as to avoid the confused and impracticable result which the Schedule was meant to obviate. *Firing v.*

6. Municipal elections are held in odd-numbered years. Pa.Const. art. 7, § 3. The Constitution also provides that:
   "All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require. . . ." *Id.*
   This provision was not amended by the Constitution adopted in 1968. Instead, the new Judiciary Article, Article V, Section 13(a), specifically provides that:
   "Justices, judges and justices of the peace *shall be elected at the municipal election* . . . ." (emphasis supplied)
   When read and construed together, it is clear that the more recent amendment supersedes and prevails over the older, general provision. *Commonwealth ex rel. Specter v. Vignola*, 446 Pa. 1, 285 A.2d 869 (1971).

*Kephart,* 18 Pa.Cmwlth. 578, 336 A.2d 470 (1975), *aff'd,* 466 Pa. 560, 353 A.2d 833 (1976).

In Count II of their petition, petitioners request relief in the nature of declaratory judgment. Under the circumstances, such relief is appropriate and will be granted. Petitioner Cercone asserts, herein, a legal right in which he has a concrete interest and which is challenged by respondents, who have felt constrained to deny his request for an extension pending final determination of the controversy in the courts. In addition, the declaration sought will effectively terminate the controversy. *See Liberty Mutual Insurance Co. v. S. G. S. Co.,* 456 Pa. 94, 318 A.2d 906 (1974); *Vanderslice Estate,* 14 Pa.D. & C.2d 446 (C. P. Columbia County 1957); Act of June 18, 1923, P.L. 840, § 1 *et seq., as amended,* 12 P.S. § 831 *et seq.* We therefore, declare that the term of Judge Cercone as a Judge of the Superior Court of Pennsylvania extends, pursuant to Section 2 of the Schedule to Article V of the Pennsylvania Constitution, until the first Monday of January 1980, and that Judge Cercone should not, and need not, run for retention election as a Judge of the Superior Court of Pennsylvania, under Article V, Section 15(b), of the Pennsylvania Constitution, until the municipal election to be held in 1979.[7] He may comply with Article V, Section 15(b), by filing a declaration of candidacy on or before the first Monday of January, 1979.

Count II of the Petition for Review is granted.

EAGEN and O'BRIEN, JJ., did not participate in the consideration or decision of this case.

7. The Petition for Review filed in this matter combines various causes of action. *See* Pa.R.A.P. 1502. In Counts I and III of the petition, petitioners request relief in the nature of mandamus and appeal, respectively. Both counts essentially ask for an order directing the respondents to issue a corrected commission to Judge Cercone. Respondents have assured this Court, however, that an amended commission would issue, with or without an order to do so, should we determine that an extension is required. Thus, we do not consider the merits of these counts.

NIX, J., filed a concurring opinion.

ROBERTS, J., filed a dissenting opinion in which POMEROY, J., joins.

NIX, Justice (concurring).

I agree with the conclusion of Mr. Chief Justice JONES, in his Opinion for the Court, that Judge Cercone's term of office as Judge of the Superior Court has been extended by operation of Section 2 of the Schedule to Article V of the Pennsylvania Constitution,[1] to the first Monday of January 1980. The Court therefore correctly holds that Judge Cercone need not run for retention election as Judge of the Superior Court until the 1979 municipal election. I do not accept the reasoning employed by Mr. Chief Justice JONES to reach this result, in that it fails to emphasize the limited scope of this Schedule provision and, implicitly suggests, albeit unintentionally, that this Court has the power, absent express constitutional authority, to extend a constitutionally mandated judicial term of office. I must reject any implication that this Court is clothed with such authority, and I am thus constrained to set forth my views on the subject.

The pertinent facts of this case may be summarized as follows. On November 5, 1968, William F. Cercone was duly elected by popular vote as Judge of the Superior Court of Pennsylvania. He took his oath of office on January 6, 1969, the first Monday of the year, for a ten year term of office expiring on the first Monday of January 1979. At the time of Judge Cercone's election to office, Judges of the Superior Court were elected in even-numbered years.[2] However, by the time he took his oath of office in January 1969, the Judiciary Article to

1. The Schedule, by its own terms, has "the same force and effect" as the Constitution. See Pa.Const. art. V, Schedule (1968).

2. Compare Act of June 24, 1895, P.L. 212, § 1, 17 P.S. § 113 (1962) with Pa.Const. art. VII, § 2 (1874).

the Constitution had been extensively revised. In addition to establishing a retention procedure for the reelection of incumbent Judges,[3] the new Article required all Judges, including those on the Superior Court to be elected at municipal elections held only on odd-numbered years.[4] The framers of the Judiciary amendments recognized that the changes to Article V would cause a break in the succession provided for under the former constitutional provisions for the Judges of the Superior Court. In order to harmonize the transition, Section 2 was enacted. Section 2 of the Judiciary Schedule provides:

"The present terms of all judges of the Superior Court which would otherwise expire on the first Monday of January in an odd-numbered year shall be extended to expire in the even-numbered year next following." Pa.Const. art. 5, Schedule, § 2.

The question now before this Court is whether Judge Cercone's term is subject to extension under this Section. The controversy centers on the interpretation to be accorded the phrase, "the present terms of all judges of the Superior Court."

According to Mr. Chief Justice JONES, "present terms" are all those in effect or arising after January 1, 1969, the effective date of the Judiciary amendments. Under this rationale, Judge Cercone is therefore included because his "term" commenced when he took his oath of office on January 6, 1969. On the other hand, the dissenting Justice concludes that "present terms" should be restricted to terms that commenced prior to the effective date of the amendments. Judge Cercone therefore would not be included because his oath was administered five days after the amendments became effective. I am unable to accept either of these interpretations.

In my view, it is clear that if we had not embraced within this jurisdiction the concept of the retention elec-

3. *See* Pa.Const. art. V, § 15(b) (1968).

4. Id. §§ 13(a), 15(b).

tion with the adoption of the new Judiciary Article, there would have been no pressing need for a provision such as Section 2. My rejection of the rationale espoused in the Opinion for the Court and the dissenting opinion is thus based upon their failure to recognize the interrelationship between Section 2 and the orderly transition of this Commonwealth to the process of judicial retention.

Prior to retention a judge who completed the term to which he or she was elected was required to participate in a partisan election if further judicial service was desired. The incumbent had no greater entitlement to the office than any other person interested in seeking it.[5] The former judge and the aspirant to the office were on the same footing and neither could complain as to when the next opportunity for election to the office would be available. Thus, a hiatus between the expiration of the incumbent's term and the next appropriate election, to allow for the change from the old to the new would be of no moment.[6] Nor would such a situation create a significant burden upon the administration of justice since the vacancy could be filled through the appointment process. *See* Pa.Const. art. V, § 13(b) (1968). A comparable situation frequently occurs when a judge dies or resigns before the expiration of his term.[7] It is often the case that a vacancy is not filled in the first general election following the creation of the vacancy. *See* Pa.Const. art. V, § 13(e) (1968); *Simmons v. Tucker*, 444 Pa. 160, 281 A.2d 902 (1971).

5. While many communities ascribed to various concepts of the sitting judge principle, it was not mandated by law and was solely dependent upon the will of the electorate.

6. In the instant case although Judge Cercone's term would expire on the first Monday of January 1979, a municipal election to fill that vacancy would not occur until November of 1979.

7. If a jurist is defeated for retention, the vacancy is to be filled by appointment, Article V, § 15(b).

The retention concept intends to place the incumbent judge in a favored position when he or she seeks another term in office.  The 1968 Judiciary Amendment was obviously intended to enhance the quality and the efficiency of the judiciary of this Commonwealth, and one of the cardinal tenets of this new philosophy was expressed in the concept of the retention election.  Retention was seen as a vehicle which would insulate the jurist from political and other outside influences by eliminating the necessity of a partisan election if the judge decided to seek another term in office.  A vacancy occurs at the end of the term only if the incumbent jurist elects not to seek the succeeding term or is rejected by the voters in the retention election.  *See* Pa.Const. art. V, § 15(b) (1968).  Thus, it was the incompatibility of the retention concept as applied to the terms of Judges of the Superior Court, who took office under the former constitutional provision, with the new requirement that judges be elected in odd-numbered years, which occasioned the necessity of Section 2 of the Schedule to Article V.[8]

Without Section 2 a Superior Court Judge who was elected to office in an even-numbered year would have his term expire on the first Monday of January of the odd-numbered year but could not seek reelection until November of that year.[9]  In this instance, the hiatus between the expiration of the term and the next appropriate election would be disastrous.  Unlike the scheme of the prior constitution, where a partisan election could have been held to fill the office, the period between the

8.  Under the 1968 Constitutional Amendment, any "justice or judge elected under section thirteen (a) . . ." is entitled to a retention election. *See* Pa.Const. art. V, § 15(b) (1968).

9.  While another possibility would be to hold the retention election in the odd-numbered year occurring two years before the odd-numbered year in which the term would expire (i. e., in this instance, the retention election would be held in 1977 for a term to begin in January 1979), I agree with both the Opinion of the Court and the dissent that such an arrangement would be violative of the public policy of this Commonwealth.

expiration of the term and the next election would now present an insurmountable problem. In such a case, a vacancy would occur at the expiration of the stated term, which would be subject to appointment for the interim period until the next appropriate election.[10] Such a result is obviously incompatible with the concept of retention, which presupposes the absence of a vacancy. Absent some authorization to extend the term, it would be impossible to preserve the right of the incumbent jurist to an uncontested, non-partisan retention election. Section 2 thus arose from the need to make the *retention process* applicable to Superior Court Judges who were formerly elected to office in an even-numbered year.[11]

It is therefore clear that the purpose of Section 2 in the overall constitutional scheme was to extend by one year the term of office of any Superior Court Judge elected to a term established under the provisions of the prior constitution in order to render the judge's term of office compatible with the new election provisions established by the amendments. Moreover, it is equally clear that this overall scheme could not be achieved if the lan-

10. That the Governor might in his discretion appoint the incumbent for the interim period, Pa.Const. art. V, § 13(b) (1968), does not protect the incumbent's right to seek retention. Under the constitutional scheme, the benefits of retention do not inure to judges who obtain their office by the process of appointment. *See* Pa.Const. art. V, § 13(c) (1968).

11. To further support the view that the retention concept was the critical consideration necessitating Section 2 is the fact that Section 2 is limited to the Superior Court and does not purport to affect the terms of Justices of the Supreme Court. Although Justices of this Court under the former constitutional provisions may have had terms that would expire within an odd-numbered year the problem sought to be remedied by Section 2 was not presented because the Justices were not entitled to seek reelection for that office after the expiration of the 21 year term. Pa.Const. art. V, § 2 (1874).

Additionally, the Commonwealth Court was created under the new Judiciary Article and therefore their terms were made consistent with the new scheme. Pa.Const. art. V, §§ 4, 15(a) (1968). Further, the Common Pleas Judges were formerly required to be elected in odd-numbered years. *See* Pa.Const. art. VII, § 3 (1874).

guage of Section 2 was interpreted to exclude from its operation any of the Judges of the Superior Court who took office under the prior constitution. This in itself is a compelling rationale for our determination today that Judge Cercone's term must be extended by operation of Section 2. We have held many times that the constitution is not to be construed to lead to an impracticable or unreasonable result, but its construction is to be sensible and expedient, in light of the constitutional purpose. *Commonwealth v. Novack*, 395 Pa. 199, 150 A.2d 102 (1959); *Duane v. City of Philadelphia*, 322 Pa. 33, 185 A. 401 (1936).

Unlike my brethren, I do not believe that a "sensible and expedient" construction of the language of Section 2 can be ascertained without a clear understanding of its intended effect, particularly in light of this Court's longstanding adherence to the principle that the constitution is entitled to a construction, as nearly as may be, in accordance with the intent of its makers. *Commonwealth ex rel. Attorney General v. Beamish*, 309 Pa. 510, 165 A. 615 (1932); *Moers v. City of Reading*, 21 Pa. 188 (1853). Reference to this principle in the instant case compels the view that the framers, in utilizing the phrase "present terms," intended to include the terms of any Superior Court Judges which had become fixed under the provisions of the prior constitution. Even though Judge Cercone did not take his oath of office until January 6, 1969, his entitlement to the judgeship in question and his term of office became fixed, pursuant to the 1874 Constitution, on November 5, 1968, the day that he was elected. Accordingly, when the new Judiciary Article and its Schedule took effect on January 1, 1969, his was a present term within the meaning of Section 2 of the Schedule.

In my view, any other construction of this provision would severely distort its intended effect. I therefore cannot accept the view of the dissenting Justice, which

he concedes is a "deviation from the constitutional scheme," *post* at 731, since it would result in six of our Superior Court's Judges being elected in odd-numbered years, and one being elected in an even-numbered year. Such a construction does not effectuate the constitutional scheme, but subverts it. If the view espoused by the dissenting Justice were adopted by this Court, we would be required to disregard the express mandate of Article V, Section 13(a) and Article VII, Section 3, that all judges be elected in an odd-numbered year.

My disagreement with the Opinion of the Court, although I reach the same result, stems from its emphasis upon the science of lexicography rather than a concentration upon the intent of the framers and the understanding of the people in adopting the Article and its Schedule. A literal reading of the language employed in the Court's opinion would suggest that any term hereinafter commencing subsequent to the effective date of the amendments is subject to modification under Section 2. It is obvious that the framers of the Schedule did not intend for this provision to authorize such sweeping judicial interference with all future terms of the Judges of the Superior Court.[12] This construction is not only patently unnecessary to effectuate the reorganization of the judiciary under the new Article V, but it is belied by the fact that Section 2 is merely part of the Schedule, attached to the Constitution to serve temporary purposes only, *see Commonwealth ex rel. Barratt v. McAfee,* 232 Pa. 36, 41, 81 A. 85, 86 (1911).

A constitutional provision establishing a fixed term of office encompasses an implied prohibition against ex-

12. I am also troubled by the language in the opinion of Mr. Chief Justice JONES, *ante* at 722–723 suggesting that the applicability of Section 2 extends to judges other than those on the Superior Court. While I have no doubt that any such ambiguity in the opinion was unintentional, I wish to clarify that the provision in question, by its express language, affects only the terms of the Judges of the Superior Court. *See* note 11 *supra.*

tending the term, and absent specific constitutional authority, no court has the power to increase a constitutionally mandated judicial term of office. *Commonwealth ex rel. Barratt v. McAfee, supra; Commonwealth v. Sheatz*, 228 Pa. 301, 77 A. 547 (1910). I for one cannot accept that Section 2 of the Schedule can be read as providing the specific constitutional authority to indefinitely suspend the operation of Article V, Section 15(a).[13]

In conclusion, I think it is clear that the Schedule provision in question was intended to be no more than a stop-gap measure. Its purpose was to bring the seven terms of the seven Judges on the Superior Court into alignment with the newly added constitutional requirement that they stand for election in an odd-numbered year and at the same time preserve the right of those judges to seek reelection by retention. Further, I understand that the one-year increase in Judge Cercone's term sanctioned by our decision today completes this process. Accordingly, Section 2 of the Schedule has served its purpose, and it has no further applicability in the judicial reorganization process.

ROBERTS, Justice (dissenting).

On November 5, 1968, William F. Cercone was elected to a ten year term as judge of the Pennsylvania Superior Court. Judge Cercone took office on January 6, 1969, for a term ending the first Monday of January 1979. Five days before he assumed office, a new Judiciary Article to the Pennsylvania Constitution took effect.[1] The new article created a unified judicial system for the first time in Pennsylvania and established a retention procedure for the reelection of incumbent judges.[2] It also

---

**13.** Article V, Section 15(a) of the 1968 Constitution fixes the term of Judges of the Superior Court at ten years.

**1.** Pa.Const. art. V.

**2.** Under the retention system, a judge seeking reelection does not run in a competitive election. His name is placed on the ballot

provided for the election of justices, and justices of the peace at municipal elections,[3] which are held in odd-numbered years pursuant to Pa.Const. art. VII, § 3. Since Judge Cercone was elected in an even-numbered year to a ten year term, his retention election will also arise naturally in an even-numbered year, creating a potential conflict with the new constitutional provisions for the election of judges in odd-numbered years. Today, this Court must decide whether Judge Cercone stands for election in 1978, immediately preceding the expiration of his ten year term, or whether his ten year term shall be extended by one year, which would permit him to stand for retention in 1979. This Court should not extend Judge Cercone's constitutionally fixed ten year term to eleven years and his retention election should be held in 1978. Accordingly, if Judge Cercone chooses to stand for retention, he should file a declaration of his candidacy on or before the first Monday of January 1978. I dissent from the majority's decision to extend Judge Cercone's term of office.

Prior to the adoption of the new Judiciary Article, judges of the Pennsylvania Superior Court were elected in even-numbered years.[4] To facilitate the transition from the old judicial system to the new one, the voters adopted the Schedule to Article V.[5] Section 2 of the Schedule provides that the terms of certain Superior Court judges shall be extended one year. The majority holds that Judge Cercone's term should be extended pursuant to § 2 of the Schedule in order to eliminate any possible conflict with Article V, § 15(b) which provides

without party designation and the only question before the voters is whether he shall be retained in office. See Pa.Const. art. V, § 15(b).

3.  Id. §§ 13(a), 15(b).

4.  Compare Act of June 24, 1895, P.L. 212, § 1, 17 P.S. § 113 (1962) with Pa.Const. art. VII, § 2 (1874).

5.  By its terms, the provisions of the Schedule have the same force and effect as the provisions of Article V.

for retention elections in odd-numbered years. Section 2 of the Schedule provides:

"The *present* terms of all judges of the Superior Court which would otherwise expire on the first Monday of January in an odd-numbered year shall be extended to expire in the even-numbered year next following." (emphasis added).

The effective date of the new Judiciary Article and the Schedule was January 1, 1969. However, Judge Cercone did not assume office until January 6, 1969. Therefore, his term is not a "present" term within the meaning of § 2 of the Schedule.

The word "present" is defined in the second paragraph of the Schedule as follows:

". . . where the word 'present' appears to speaks from the effective date hereof."

The majority seizes upon the word "from" within this definition and concludes that "present terms of all judges of the Superior Court" includes terms which commenced after the effective date of the new Judiciary Article. This interpretation departs from the common usage of the word "present" [6] and ignores the context in which the definition of the word "present" is set forth.

The second paragraph of the Schedule to Article V states in full:

"This article and schedule, unless otherwise stated herein, shall become effective on January 1, 1969. In this schedule where the word 'now' appears it speaks from the date of adoption of this schedule; where the word 'present' appears it speaks from the effective date hereof."

---

6. Cf. 1 Pa.C.S.A. § 1903(a) (Supp.1976) ("Words and phrases shall be construed according to their common and approved usage. . . ."). The Random House Dictionary of the English Language (Unabr. ed. 1967) defines the word "present" as follows: "1. being, existing, or occurring at this time or now. . . . 2. at this time. . . ."

The context in which the word "present" is defined indicates that the framers' intent was to distinguish the Schedule's adoption date (April 23, 1969) from its effective date (January 1, 1969), not to alter the usual meaning of the word "present." Thus, in extending the "present" terms of all judges of the Superior Court, § 2 refers only to those terms actually in existence on January 1, 1969. Since Judge Cercone had not yet assumed office on that date, § 2 of the Schedule does not apply to his term of office.

Section 2 of the Schedule was the sole vehicle provided by the framers for the transition from the former to the present judicial system. Unfortunately, the framers did not foresee the possibility that the term of a future Superior Court judge would later expire in an odd-numbered year. The failure of the Schedule to cover all contingencies which could arise during the transition between judicial systems places the responsibility upon this Court to effect a solution which best comports with the purposes of Article V. In this case, there are three alternatives:

(1) a retention election in 1977 for a term to begin on the first Monday of January 1979;

(2) a retention election in 1978 for a term to begin on the first Monday of January 1979;

(3) extension of Judge Cercone's term by one year despite the inapplicability of § 2 of the Schedule to art. V, with a retention election in 1979 for a term to begin on the first Monday of January 1980.

The first alternative would require Judge Cercone to run for retention in 1977 for a term to begin approximately fourteen months later in January 1979. I agree with the majority that such a lengthy period between election and assumption of office is undesirable and contravenes the public policy of this Commonwealth.[7]

7. See *Commonwealth ex rel. Barratt v. McAfee*, 232 Pa. 36, 81 A. 85 (1911).

The third alternative is also unacceptable. Article V, § 15 of the Constitution provides that the term of office for a Superior Court judge shall be ten years. A constitutional provision which establishes a fixed term of office carries an "implied prohibition" against extending the term.[8] In *Commonwealth ex rel. Barratt v. McAfee*, 232 Pa. 36, 81 A. 85 (1911), this Court struck down a statute which extended the terms of common pleas judges who were unable to run for reelection in the years their terms expired because of an intervening constitutional amendment changing the election years for their offices. In the absence of express constitutional authority for extending their terms, this Court ruled that the Legislature could not do so by statute.[9] Here, there is no constitutional authority for extending Judge Cercone's term of office. The implied prohibition against extending a term of office fixed by the Constitution applies equally to this Court. We have no power to extend Judge Cercone's term of office absent authorization in the Schedule to Article V.

I conclude that the second alternative best resolves the conflicting policies involved in this case. It would not alter the constitutionally established ten year term of office for Superior Court judges. Moreover, it preserves Judge Cercone's right to stand for retention, and at the same time ensures that his retention shall be determined at the election immediately preceding the expiration of his term of office.

8. Id. at 44, 81 A. at 87.

9. The constitutional amendment provided for the election of common pleas judges in odd-numbered years. Previously, judges had been elected in even-number years. A Schedule to the amendment extended the terms of judges whose terms ended in 1911 but not those whose terms ended in odd-numbered years after 1911. Thus, a judge whose term expired in 1913, for example, was unable to seek reelection in 1912. The Legislature passed a statute extending by one year the terms of judges whose terms expired in odd-numbered years. In *McAfee*, this Court held the statute unconstitutional.

Holding Judge Cercone's retention election in 1978 would result in an even-numbered year election.[10] However, there must inevitably be some deviation from the constitutional scheme due to the framers' failure to foresee the present situation. An election in an even-numbered year does less violence to the constitutional framework than extending a constitutionally established term of office or holding an election more than a year before a judge's term expires. Indeed, Article VII, § 3 of the Constitution explicitly recognizes that circumstances may require that an election be held in an even-numbered year:

> "All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances require."

Article V's provisions for elections in odd-numbered years may be fairly read as an exercise of the choice provided by Article VII, § 3, rather than as an implied repeal of that section.[11] Article VII, § 3 and Article V, §§ 13(a), 15(b), read together, disclose a constitutional policy which favors but does not compel election of judges in odd-numbered years. When "circumstances require," an election for judge may be held at a general election, i. e., in an even-numbered year.[12] I believe that "circum-

---

10. Article V, § 15(b) provides that retention elections should be held "at the municipal election preceding the expiration of the term of the justice or judge."

11. Cf. *Parisi v. Philadelphia Zoning Board of Adjustment*, 393 Pa. 458, 463, 143 A.2d 360, 363 (1958) ("[An implied repeal] can arise only where the language used in the later statute necessarily discloses an irreconcilable repugnancy between its provisions and those of the earlier statute so inconsistent as not to admit of any fair consonant construction of the two."); 1 Pa.C.S.A. § 1971 (Supp.1976).

12. *Commonwealth ex rel. Barratt v. McAfee,* supra, does not compel a different result. In *McAfee,* this Court held (1) that a statute extending the terms of common pleas judges was unconstitutional and (2) it would violate public policy to hold an election in 1911 for a term which would begin fourteen months later in 1913. In effect, the Court ruled that a constitutional amendment had removed the right of certain judges to run for reelection before

stances require" that Judge Cercone's retention election be held in an even-numbered year.

For these reasons, I conclude that Judge Cercone should have the option of seeking retention in 1978 for a term to begin in January 1979. Article V, § 15(b) provides that an elected judge ". . . may file a declaration of candidacy for retention election with the officer of the Commonwealth who under law shall have supervision over election on or before the first Monday of January of the year preceding the year in which his term of office expires." Accordingly, 1 would hold that Judge Cercone may file a declaration of his candidacy on or before the first Monday of January 1978.

POMEROY, J., joins in this dissenting opinion.

their terms of office expired. Since there could be no election in 1912 for a term ending in 1913, the Court found that a vacancy would occur which would be filled by gubernatorial appointment. However, the Constitution at that time did not include provision for reelection by retention. The Court in *McAfee* merely removed whatever advantage exists for an incumbent seeking reelection in a competitive election. Today, however, a judge has the right to stand for reelection by retention. The retention system established by the new Judiciary Article supplies a reason to permit an election in an even-numbered year which was not present at the time *McAfee* was decided.