440 A.2d 1380

**James R. CAVANAUGH, Petitioner,**

v.

**William R. DAVIS, Secretary of the Commonwealth,
Respondent.**

Supreme Court of Pennsylvania.

Submitted on Briefs Feb. 3, 1982.

Decided Feb. 11, 1982.

David F. Binder, Stephen M. Feldman, Philadelphia, for petitioner.

Mary Ellen Krober, Harrisburg, for respondent.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Petitioner James R. Cavanaugh seeks a declaration and direction to respondent Secretary of the Commonwealth that the successor to the seat on the Supreme Court of Pennsylvania presently held by Chief Justice Henry X. O'Brien, whose elected term of office expires on January 3, 1983, is to

be chosen in November of 1982 at the general election immediately preceding the expiration of the term.[1]  Respondent has refused to certify the seat for election in 1982, on the basis of his belief that an election for the seat may not be held until the municipal election of 1983.  For the reasons that follow, we conclude that the seat occupied by Chief Justice O'Brien is to be filled at the general election of November 1982.  Thus we grant the requested relief.

The dispute between the parties has arisen because of the seeming inconsistency of two constitutional provisions, both of which apply to the election of justices of the Supreme Court.  Article VII, § 3, of the Pennsylvania Constitution, adopted in 1874, provides:

"All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require.  * * * "

Article V, § 13(a), of the Pennsylvania Constitution, adopted in 1968, provides:

"Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve."

Respondent argues that, because Article V, the Judiciary Article, was adopted more recently than Article VII, the Election Article, the Judiciary Article's provision for a municipal election should control, superseding the provision of the Election Article which permits "either a general or municipal election, as circumstances may require."  Thus, respondent would have the seat filled from January 1983 to January 1984 by gubernatorial appointment and Senate confirmation, if it is to be filled at all.

1.  Petitioner, presently a judge of the Superior Court, has declared his intention to be a candidate for the judicial office held by Chief Justice O'Brien.

The present action for a declaratory judgment and a writ of mandamus was filed in the Commonwealth Court.  Upon the application of petitioner, this Court assumed plenary jurisdiction on January 22, 1982.  See 42 Pa.C.S. § 726.

354

■ Respondent's argument disregards established principles of constitutional construction. Because the language of the two constitutional provisions at issue relates to the same subject matter, the election of judges, the two provisions must be construed together. See *Berardocco v. Colden,* 469 Pa. 452, 459, 366 A.2d 574, 577 (1976); *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976); *Weiss v. Zeigler,* 327 Pa. 100, 104, 193 A. 642, 644 (1937). See also Statutory Construction Act of 1972, 1 Pa.C.S. § 1932. Moreover, because the Constitution is an integrated whole, effect must be given to all of its provisions whenever possible. See *Cali v. Philadelphia,* 406 Pa. 290, 177 A.2d 824 (1962). See also Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a).

■ When Article VII, § 3, and Article V, § 13, are read in light of these principles, it is clear that the Constitution treats differently two classes of judges, those judges who are chosen by electors of the State at large and those judges who are elected locally. Locally elected judges are to be chosen at municipal elections, which are defined in Article VII, § 3, as elections held in odd-numbered years. No exception to this rule is provided. By contrast, although judges elected state-wide ordinarily are to be chosen at municipal elections, an explicit constitutional exception is provided for election at a general election "as circumstances may require."

■ Where, as here, the term for a judicial seat filled by the electors of the State at large is scheduled to expire in an odd-numbered year, "circumstances ... require" that the succeeding justice be elected at a general election, the election that immediately precedes the expiration of the term. This conclusion is compelled by the constitutional preference for election over appointment of judges, a preference that is demonstrated and implemented by Article VII, § 3, and Article V, § 13.[2] As this Court has unanimously stated,

2. This conclusion is also compelled by "the long-established public policy of our state which allows but a short time to intervene between an election and the assumption of office." *Commonwealth*

"whenever possible, judicial officers shall be elected by a complete electoral process. The appointive process of section 13(b) [of Article V of the Pennsylvania Constitution] was intended to fill a judicial vacancy only until the office could again be filled by a popularly elected officer." *Berardocco v. Colden,* 469 Pa. 452, 459, 366 A.2d 574, 576 (1976). Accord, *Barbieri v. Shapp,* 476 Pa. 513, 520, 383 A.2d 218, 222 (1978) (*Barbieri II*) ("appointment procedure of section 13(b) is a stopgap to fill seats that unexpectedly fall vacant"); *Leedom v. Thomas,* 473 Pa. 193, 195, 199, 373 A.2d 1329, 1330, 1332 (1977) ("section 13(b) . . . 'was not intended to frustrate the electoral process' "). This constitutionally mandated preference for election would be defeated if a vacancy occurring at the end of a fixed term in a state-wide judicial office were to be filled by appointment simply because that vacancy, as here, occurs in an odd-numbered, rather than an even-numbered, year.

Respondent's belief that the election should be held in 1983 is based upon the opinion announcing the judgment of the Court in *Barbieri v. Shapp,* 470 Pa. 463, 368 A.2d 721 (1977) (*Barbieri I*) (plurality). There in a footnote, former Chief Justice Jones, joined by only one other member of the Court, observed with reference to the presently disputed constitutional provisions: "When read and construed together, it is clear that the more recent amendment supersedes and prevails over the older, general provision." 470 Pa. at 468 n.6, 368 A.2d at 724 n.6. This statement is neither precedential nor persuasive authority. The statement is not germane to the only issue disposed of in that opinion, whether the extension of "present terms" of Superior Court judges provided for by Section 2 of the Schedule to Article V

*ex rel. Barratt v. McAfee,* 232 Pa. 36, 45, 81 A. 85, 88 (1911). For this reason, despite disagreement as to the appropriate resolution of the case, all members of the Court in *Barbieri v. Shapp,* 470 Pa. 463, 368 A.2d 721 (1977) (*Barbieri I*), expressed agreement that where an office is expected to become vacant in an odd-numbered year, it would be inappropriate to hold an election for that office at the nearest preceding municipal election almost fourteen months earlier. Of course, on this record such an unwise procedure is not even an available option.

of the Constitution included the term of a Superior Court judge who had been elected prior to the effective date of the Schedule but who had not assumed office as of that date. Moreover, the observation of former Chief Justice Jones overlooks the fact that the two constitutional provisions in dispute can be construed as compatible, and thus must be so construed. As has been shown, Article V, § 13(a), provides a general rule that state-wide judges are to be elected at municipal elections, while Article VII, § 3, provides a specific exception authorizing the election of state-wide judges at general elections "as circumstances may require."

The decision of the Commonwealth Court in *Barbieri v. Thornburgh*, 42 Pa.Cmwlth. 1, 400 A.2d 653 (1979), is equally unpersuasive. That decision relied upon the dictum and non-decisional language of *Barbieri I* to hold that the anticipated vacancy on the Supreme Court at the expiration of the term of then Chief Justice Eagen should be filled by appointment until the next municipal election. That decision, which was never appealed to this Court, is at odds with our holding today and is expressly disapproved.[3]

In *Barbieri v. Shapp*, 476 Pa. 513, 383 A.2d 218 (1978) (*Barbieri II*), this Court rejected arguments that the seats of four common pleas court judges who reached mandatory retirement age prior to an upcoming municipal election should be filled by gubernatorial appointment pursuant to Pa.Const. art. V, § 13(b), "for an initial term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs," and not filled at the upcoming election. Although the Court acknowledged that "a narrow, technical construction" of the appointment clause would permit such appointments, it recognized that a deferred election would frustrate "the intent of the framers and of the People of the Commonwealth, who

**3.** Because we hold that Article VII, § 3, and Article V, § 13, are compatible, we do not reach the issue of whether the Constitutional Convention of 1967–1968 was empowered to revise or repeal constitutional provisions other than those enumerated in the referendum that authorized the convening of the Convention. Article VII, the Election Article, was not among the enumerated articles.

adopted section 13 intending that whenever possible judges´ are to be elected." In holding that "the 'ten month' provision of section 13(b) does not apply where the end of a fixed term—expiration of the judge's elected term or attainment of mandatory retirement age—produces the vacancy," the Court reasoned:

"The judge's mandatory retirement date is as easily and as certainly known in advance as the date upon which the regular term of a nonretiring judge will expire. Potential candidates, election officials and the voting public have sufficient notice to prepare for the election, even though the judge has not yet retired at the time the election process begins."

476 Pa. at 521–22, 383 A.2d at 222.

This reasoning is equally applicable here. The date upon which the twenty-one year term of Chief Justice O'Brien will expire has been known since his assumption of office, and there has been ample notice to prepare for the election of his successor. Thus, given the absence of a constitutional prohibition against the election of a Supreme Court justice in a general election year, the affirmative constitutional preference for election over appointment, and the explicit language of Article VII, § 3, that provides for the election of state-wide judicial officers at a general election "as circumstances may require," the successor to the seat presently held by Chief Justice O'Brien must be elected at the general election of 1982.

■ Accordingly, it is ordered that the judicial office of Chief Justice Henry X. O'Brien, which expires on January 3, 1983, be filled by election at the November 2, 1982, general election;

It is further ordered that respondent Secretary of the Commonwealth give notice forthwith to all persons entitled to notice under the Election Code, 25 P.S. § 2865, that the above judicial office will be listed for election on the May 18, 1982, primary ballot and on the November 2, 1982, general election ballot;

It is further ordered that respondent perform all other acts necessary and proper to assure that the above judicial office shall be filled at the November 2, 1982, general election.

NIX, J., files a dissenting opinion.

NIX, Justice, dissenting.

The most sacred duty of a court of last resort is to guard the integrity of the constitution of its jurisdiction and thereby give expression to the will of the people. There are, of course, areas where reasonable men may differ as to constitutional intent, but a blatant disregard of the clearest possible mandate through the use of sophistry cannot be accepted without the most vociferous dissent.

The single question to be decided in this appeal is the appropriate time for the election in which the present Chief Justice's successor will be chosen.[1] The term of office for Chief Justice O'Brien expires on the first Monday of January 1983, as the result of the expiration of his 21-year term. Article V, § 2, Constitution of 1874. The majority has concluded that the election for the office should take place in the general election of 1982. In my view that result is in direct conflict with the unequivocable mandate of Article V, § 13(a)[2] that "Justices... [of the Supreme Court] ... *shall* be elected at the *municipal election....*"[3] Article V,

---

1. This question although previously raised in *Barbieri v. Thornburgh*, 42 Pa.Commonwealth Ct. 1, 400 A.2d 653 (1979) was not decided therein.

2. Article V, § 13(a) provides as follows:
   § 13. Election of justices, judges and justices of the peace, vacancies.
   (a) Justices, judges and justices of the peace shall be elected at the municipal election next preceding the commencement of their respective terms of office by the electors of the Commonwealth or the respective districts in which they are to serve.

3. The term "municipal election" is defined, by statute, as "[t]he election held on the first Tuesday following the first Monday in November in each *odd-numbered year.*" [Emphasis added.] 1 Pa. C.S. § 1991. The general election is the election held "on the Tuesday next following the first Monday of November in each *even-*

§ 13(a) requires that the election in question be held in 1983 and that Chief Justice O'Brien's successor assume office the first Monday of January 1984.[4]

Through specious and tortured reasoning, the majority has reached the amazing conclusion that although Article V, § 13(a) merely provides a "general rule" that state-wide judges are to be elected at municipal elections, Article VII, § 3 provides a specific exception authorizing the election of state-wide judges at general elections "as circumstances may require." They then conclude that the "circumstances" of this case provides such a justification.

Stripping all of the trappings from our inquiry, the vortex of the controversy is whether there is any legitimate basis to ignore the constitutional mandate that Justices of the Supreme Court *"shall* be elected at the municipal election." This mandate provides for no exception. In creating an exception the majority has demonstrated a total disregard of its responsibilities and has displayed an arrogant assumption of power.

The vehicle used to justify their position is the alleged tension between Article V, § 13(a) and Article VII, § 3. I do not agree that such a tension exists. A reading of the two provisions in a proper historical prospective indicates that these provisions are in fact in harmony and attempt to achieve the same basic objective. Moreover, assuming arguendo the conflict they suggest exists, their proposed reconciliation does not harmonize the basic thrust of the two provisions, but rather ignores completely the mandate of Article V, § 13(a). Harmony cannot be achieved between two provisions which are "seemingly inconsistent" or an "ambiguity" resolved to produce compatibility by ignoring the expressed intendment of one of the provisions.

*numbered year."* [Emphasis added.] *Id.* I will use odd and even-numbered years interchangeably with municipal and general elections.

4. Section 5 of the Act of March 2, 1911, P.L. 8, 65 P.S. § 75 provides that "the terms of all public officers selected in odd-numbered years shall hereinafter begin on the first Monday of January succeeding their election. . . ."

360

A characterization that Article V, § 13(a) provides only "a general rule" that state-wide judges are to be elected at municipal elections is intellectually dishonest. The language *specifically mandated* that Justices of the Supreme Court, as well as all other judges and district justices, *to be elected* in odd years. Equally as deceiving is the majority's attempt to treat Article V, § 13(a) as the general and the provisions of Article VII, § 3 as the specific, when in fact the contrary is true. Article VII is concerned with the general subject of elections of public officials in Pennsylvania and its political subdivisions. In contrast, Article V, § 13(a) sets forth the election scheme only for judicial officers.

The historical setting in which these two constitutional provisions were drafted makes it clear that there is in fact no "seeming inconsistency" between Article V, § 13(a) and Article VII, § 3. Moreover, the proposed reconciliation offered by the majority is not an effort to harmonize the alleged tensions between the two provisions, but rather results in a blatant disregard of the unambiguous mandatory directive contained in Article V, § 13(a).

Article VII, § 3 provides:

All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require. All elections for judges of the courts for the several judicial districts, and for county, city, ward, borough, and township officers, for regular terms of service, shall be held on the municipal election day; namely, the Tuesday next following the first Monday of November in each odd-numbered year, but the General Assembly may by law fix a different day, two-thirds of all the members of each House consenting thereto: Provided, That such elections shall be held in an odd-numbered year: Provided further, That all judges for the courts of the several judicial districts holding office at the present time, whose terms of office may end in an odd-numbered year, shall continue to hold their offices until the first Monday of January in the next succeeding even-numbered year.

The majority reads the first sentence as conferring the right to hold elections of Supreme Court Justices during even-numbered years and argues that, that right must be recognized even though Article V, § 13(a) expressly mandates that the Supreme Court Justices be elected in odd-numbered years. First, it must be emphasized that Article VII, § 3 reflects the clear public policy of this Commonwealth that judicial elections should be held in odd-numbered years. *Barbieri v. Shapp*, 470 Pa. 463, 368 A.2d 721 (1977); *Barbieri v. Thornburgh*, 42 Pa.Commonwealth Ct. 1, 400 A.2d 653 (1979). This same policy is embraced in Article V, § 13(a). Second, Article VII, § 3 did not direct that state-wide judges *should be* elected during even-numbered years but merely allowed such an election "as circumstances *may* require" (emphasis added).

The first sentence of the present Article VII, § 3 first appeared in the 1909 Amendment to Article VIII, § 3 of the Constitution of 1874. The "circumstance" that required the latitude afforded by that sentence was that Supreme Court Justices were then elected for terms of 21 years. Because the term of office was an odd-number, it was impossible to assure that its expiration would occur on the first Monday of an even year. The latitude permitted by the first sentence of Article VII, § 3 merely accommodated the problem created by the odd-numbered terms of Supreme Court Justices. However, as previously stated, the entire provision reflects the preference of conducting judicial elections in odd-numbered years. The section even provided an extension for then existing terms which would expire in odd-numbered years to avoid the further necessity of holding elections in even-numbered years.

Also significant, in demonstrating the kinship between Article VII, § 3 and Article V, § 13(a), rather than an antagonism is found in Schedule Article 5, § 2.[5] The Sched-

---

5. Pa.Const.Art. V, Schedule, § 2, provides:
   The Superior Court
   Until otherwise provided by law, the Superior Court shall exercise all the jurisdiction now vested in the present Superior Court. The present terms of all judges of the Superior Court which would

ule uses the exact same device, for adjusting then existing terms of the Superior Court[6] as was employed by Article 7, § 3 to bring the terms of the various judicial district judges into synchronization. *Cf. Barbieri v. Shapp*, 470 Pa. 463, 368 A.2d 721 (1977). The majority freely admits that Article VII, § 3 mandated without exception that election of the judges of the judicial districts must occur in odd-numbered years. This was accomplished by extending those terms which would have expired in odd-numbered years. Yet, when the same device is used to adjust state-wide judicial terms, the majority chooses to ignore the clear intention that is reflected.

In contrast, Article V was an Amendment adopted April 23, 1968. The drafters of Article V were charged with modernizing our judicial system to accommodate the changes that had taken place since the promulgation of the Constitution of 1874. As noted, the public policy to conduct judicial elections in odd-numbered years was carried over and reinforced in this new Article. By changing the term of office of Supreme Court Justices from 21 years to 10 years, the "circumstance" which required the latitude provided by the first sentence in Article VII, § 3 was removed. Thus Article VII, § 3 and Article 5, § 13(a) both reflect the same public policy that judicial elections occur in odd years. The more recent provision merely deleted language providing for a contingency that no longer existed.

Although the majority gives lip service to adherence to the rules of constitutional interpretation, an analysis of those principles applied to their position establishes conclusively the contrary.

otherwise expire on the first Monday of January in an odd-numbered year shall be extended to expire in the even-numbered year next following.

**6.** The new constitutional amendment had changed the Supreme Court terms to even-numbered years and provided even-numbered terms for the newly created Commonwealth Court. Thus, the only appellate court remaining to be adjusted was the Superior Court which was addressed by this provision of the schedule.

A constitution is not to receive a technical or strained construction, but rather the words should be interpreted in popular, natural and ordinary meaning. We should also consider the circumstances attending its formation and the construction probably placed upon it by the people. *Commonwealth v. Harmon*, 469 Pa. 490, 495, 366 A.2d 895, 897 (1976).

A constitution is not to be construed to lead to an impracticable or unreasonable result, but its construction is to be sensible and expedient in light of the constitutional purpose. *Commonwealth v. Novack*, 395 Pa. 199, 150 A.2d 102 (1959); *Duane v. City of Philadelphia*, 322 Pa. 33, 185 A. 401 (1936). A constitution is entitled to a construction as nearly as may be, in accordance with the intent of its makers. *Commonwealth ex rel. Attorney General v. Beamish*, 309 Pa. 510, 165 A. 615 (1932); *Moers v. City of Reading*, 21 Pa. 188 (1853).

In *Walsh v. Tate*, 444 Pa. 229, 282 A.2d 284 (1971), this Court through Mr. Justice Roberts, stated:

We start with certain basic principles of constitutional interpretation. It is a fundamental rule that *the words of a constitution, where plain, must be given their common or popular meaning, for it is in that sense the voters are assumed to have understood them when they adopted the constitution, Breslow v. Baldwin Township School District,* 408 Pa. 121, 182 A.2d 501 (1962). Further, the presumption is that each and every clause in a written constitution has been inserted for some useful purpose and courts should avoid a construction which would render any portion of the constitution meaningless. Different sections, amendments or provisions relating to the same subject, or in pari materia, are to be construed together and read in the light of each other.  . . .

*Id.,* 444 Pa. at 237, 282 A.2d at 284 [citations omitted, emphasis added].

The people of Pennsylvania, in adopting Article V, § 13(a), clearly intended from the language of that provision to elect Supreme Court Justices in the odd-numbered years.

To judicially articulate, at this late stage, a previously unstated exception frustrates the public will.

As has been previously indicated, both Article VII, § 3 and Article V, § 13(a) reflect a constitutional intention requiring judicial elections to be held in odd-numbered years. This scheme is further evidenced in Article V, § 15.[7] It is reinforced by the historical fact that adjustments were made to accommodate this symmetry. Pa.Const. Article V, Schedule, § 2; *see also* Article VII, § 3 which provides *inter alia*:

> ... all judges for the courts of the several judicial districts holding office at the present time, whose terms of office may end in an odd-numbered year, shall continue to hold their offices until the first Monday of January in the next succeeding even-numbered year.

Today's departure not only offends the unqualified mandate of Article V, § 13(a) but runs counter to the obvious intent reflected throughout the document to hold judicial elections only in odd-numbered years.[8]

**7.** Article V, § 15, in pertinent part, relating to retention elections of Supreme Court Justices provides, *inter alia*: "If a justice ... files a declaration [of intent to seek retention] his name shall be submitted to the electorate ... at the *municipal election* immediately preceding the expiration of the term of office of the justice...." [Emphasis added.] Under the holding of the majority in the instant case, petitioner, if elected in November 1982, would assume office in January 1983. His ten-year term of office would expire in January of 1993. If petitioner decided to seek retention under Article V, § 15 the "*municipal election immediately preceding* the expiration" of his term would have to take place in November 1991, over one year before the expiration of petitioner's term. *See e.g., Commonwealth ex rel. Barratt v. McAfee*, 232 Pa. 36, 45, 81 A. 85, 88 (1911). Under the majority's reasoning, an additional exception that judicial elections be held in even-numbered years would be required. This anomaly would be perpetuated as long as the successful successor remained in office.

**8.** This attempted symmetry that began with the 1913 amendment to Article VII, § 3 (Courts of Common Pleas); the 1968 amendment to Article V, Schedule, § 2 (Superior Court); and the 1968 amendment to Article V, Schedule, § 3 (Commonwealth Court) would have been finally achieved but for today's result. As stated by Judge Bowman in *Barbieri v. Thornburgh, supra*, the election of Supreme Court Justices in odd-numbered years "... literally meets the mandate of

Ironically, the majority's proffered reconciliation is also offensive to the fundamental rules of constitutional interpretation. As previously stated, Article VII was concerned with the general subject of the election of public officials. Article V, § 13(a) specifically addressed the election and appointment of judicial officers. Article V, § 13(a) is not only a specific pronouncement upon the subject in question; it is also the more recent constitutional pronouncement on that subject. To ignore Article V, § 13(a) in favor of an inferred exception stemming from Article VII, § 3 would ignore fundamental precepts that the specific must have preference over the general and that a later pronouncement is given priority over earlier pronouncements.[9] *See, generally, Barbieri v. Shapp, supra; Commonwealth ex rel. Specter v. Vignola*, 446 Pa. 1, 285 A.2d 869 (1971); *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962); *Lennox v. Clark*, 372 Pa. 355, 93 A.2d 834 (1953); *cf.* 1 Pa. C.S.A. §§ 1933, 1934, 1935, 1936 (Supp. 1981–82).

Finally, the novel constitutional principle suggested by this ruling is also distressing. Implicitly the majority suggest that a court's articulation of public policy may overrule an explicit constitutional mandate. The majority argues that the preference of a popularly elected judicial official over an appointed one may justify ignoring the direction of Article V, § 13(a) that judicial elections must be held in odd years. There is neither authority nor persuasive reason to conclude that the public policy expressly articulated in the Constitution can be ignored by a policy created by decisional law. Section 13(b) expressly provides for appointments

Section 13(a), Article V, would solve the problem for the future, would normalize the time span between one's election and the assumption of office, and would synchronize such elections within the general framework of the election of *all* judges as set forth in Article V." *Id.*, 42 Pa.Commonwealth Ct. at 9, 400 A.2d at 657.

**9.** It is obvious when the proper constitutional interpretive analysis is accepted, i.e., the constitution mandates throughout its provisions that judicial elections occur during odd-numbered years and that these provisions are not in conflict but rather in complete harmony, the majority's attempt to reconcile "seemingly inconsistent" or "ambiguous" constitutional provisions becomes unnecessary.

where there is a vacancy. By its own terms it limits the appointment to the next municipal election more than 10 months after the vacancy occurs. The language of this provision fully protects any policy favoring popular election and does not require the intermeddling of a court.

For the aforestated reasons the judicial office of Chief Justice Henry X. O'Brien, which expires on January 3, 1983, should be filled by election at the November 1983 municipal election. I therefore would concur in the judgment of the Secretary of the State that the office should not be placed on the ballot for election in 1982.