### 26750. COMMITTEE FOR NEW COBB COUNTY REVENUE et al. v. BROWN et al.

Argued October 13, 1971—Decided November 5, 1971—
Rehearing denied November 18, 1971.

*McDonald, Dupree, Channell & Rodriguez, Duard R. McDonald, John H. Moore,* for appellants.

*Ingram, Flournoy & Downey, G. Conley Ingram, A. Sidney Parker, Bullock, Yancey, Mitchell & Fink, Kyle Yancey,* for appellees.

Almand, Chief Justice. This appeal is from a temporary restraining order forbidding the Ordinary of Cobb County to hold an election to determine whether the county should permit the manufacture, sale and distribution of alcoholic beverages.

On October 26, 1970, a petition was filed with Max D. Kaley, Ordinary of Cobb County, requesting that a special election be held within 30 days for the purpose of allowing or disallowing the sale of alcoholic beverages and liquors. The petition was submitted by an unincorporated association known as The Committee for New Cobb County Revenue, and was signed by Ralph R. Mangum as chairman. Attached to the main petition were individual petitions bearing signatures which were stated to be those of more than 35 percent of the registered qualified voters of the county at the last general election, as required by *Code Ann.* § 58-1003.

On November 4, the ordinary called the election to be held on November 21, and thereafter he advertised the election in the official gazette of the county the number of times required by law.

On November 17, the appellees, as residents and taxpayers of Cobb County, filed their petition against the ordinary seeking to halt the election. They alleged, in part, that it

was the duty of the ordinary, before calling the election, to determine that the petitions had been signed by at least the requisite 35 percent of the voters; that he had failed to do this; that it was not until November 11 that the ordinary certified that he had sufficient valid signatures; that many persons whose names were on the petitions desired for various reasons to remove their names; that, contrary to the ordinary's determination, the petitions did not actually contain sufficient valid signatures; that many of the names on the petitions were submitted in 1966 to request a similar liquor referendum; that the signatures submitted in 1966 were now stale and without legal viability; that the ordinary was obligating and expending public funds in preparation for the election; and, that they had no adequate remedy at law to stop the alleged illegal expenditure of public funds. They prayed, among other things, that the petition be declared null and void; that the call for the special election be declared null and void; that the election be canceled; and, that the ordinary be restrained from obligating and expending public funds to prepare for and conduct the election.

A hearing was held on November 19, two days before the date set for the election, at which time The Committee for New Cobb County Revenue and Ralph R. Mangum, individually and as chairman of the group, were permitted to intervene. The ordinary, Max D. Kaley, testified at the hearing that when he issued the election call on November 4 he had not yet checked each signature on the individual petitions to determine whether they were valid or invalid, but that he had determined that the signatures were numerically sufficient to constitute those of more than 35 percent of the registered qualified voters. He stated that it was not until November 11 that he determined, on the basis of verifying each signature individually, that sufficient valid signatures had been submitted. At the conclusion of the evidence, the trial court temporarily restrained and enjoined the ordinary from holding the election on November 21, and retained jurisdiction of the matter.

During the hearing, the trial court indicated that the or-

dinary could "reaudit" the petitions to determine if there were sufficient signatures. On December 4, the ordinary issued a second election call; this time for December 19, wherein he stated that the petitions had been reaudited and again found to contain the signatures of at least the requisite 35 percent of the voters.

On December 7, the appellees filed their motion for further injunctive relief in which they alleged that the second election call was afflicted with all of the legal infirmities specified in their original complaint, and that, in addition, the election would not be held in accordance with the mandatory provisions of *Code Ann.* § 58-1001 et seq. They prayed that the petition be declared null and void and that the ordinary be enjoined from holding the election on December 19, or on any other date.

The trial court issued an ex parte restraining order and scheduled a hearing for January 7, 1971. After the hearing, no further order issued until June 14, 1971, on which date the court temporarily restrained and enjoined the ordinary from holding an election on the liquor question, on the grounds (a) that an election could not then be held within 30 days from the filing of the petition as required by *Code Ann.* § 58-1003, and (b) that the petition "does not meet the mandatory requirements of Georgia law authorizing and providing for such an election."

This order was certified for immediate review and is the subject of this appeal.

■ Appellants assert in several enumerations of error that the trial court erred in assuming equity jurisdiction, on the ground that appellees had an adequate remedy at law to contest the election under the Georgia Election Code. That code provides that ". . . the approval or disapproval of any question submitted to electors . . . may be contested . . . by any aggrieved elector who was entitled to vote . . . for or against such question." *Code Ann.* § 34-1702. The grounds for contesting the result of an election, insofar as they could be applicable here, are "(a) Malconduct, fraud, or irregularity by any primary or election official or officials

sufficient to change or place in doubt the result." *Code Ann.* § 34-1703.

These provisions are not applicable to the instant case for the reason that they only provide a means for contesting the result of a completed election. Here, appellees sought to enjoin the ordinary from holding the election at all. This situation presents an exception to the general rule that the holding of an election is a political matter not ordinarily cognizable in a court of equity. The applicable rule was stated in *Ogburn v. Elmore,* 121 Ga. 72, 73 (48 SE 702): "Elections by the people, either for the choice of public officers, or for the determination of other matters submitted to the popular vote, being the exercise of the political power, the general rule is that a court of equity will not interfere in any matter concerning the same. However, if under the guise of an election which is really unauthorized by law, the property or person of the citizen is imperiled, equity will interfere." As to what constitutes an interest of the citizen which thus may be imperiled, "[t]his court has many times held that citizens and taxpayers of counties and municipalities have such interest as will authorize them to maintain actions to enjoin the unlawful disbursement of the public funds of such counties or municipalities." *Aiken v. Armistead,* 186 Ga. 368, 381 (198 SE 237), and cit.

Appellees were not obligated to wait until the election had been held before seeking relief, and the trial court, therefore, properly assumed equity jurisdiction.

■ Appellants assign as error the trial court's order of November 19, which prevented the ordinary from holding the election on November 21, the date for which it orginally was scheduled. The basis for this order was the failure of the ordinary, before he issued the election call, to determine that the petition contained the requisite number of valid signatures.

We are of the opinion that the ordinary was required to verify that the petitions were signed by at least the requisite 35 percent of the voters before he could issue a valid

election call, and that this prerequisite was mandatory. This situation was alluded to in *Barrentine v. Griner,* 205 Ga. 830 (2) (55 SE2d 536), wherein we stated: "In *Whittle v. Whitley,* 202 Ga. 633 (44 SE2d 241), this court held that the requirements as to notice of such a special election was [sic] mandatory, and a failure to comply therewith vitiated the election . . . The prerequisite as to a proper petition by thirty-five percent of the qualified registered voters is also mandatory; and it follows that a failure to comply with this mandatory prerequisite vitiates the election." The key words in this quotation are "proper petition," and the only means by which the ordinary may determine whether the petition is proper is by validating each signature. Only when this procedure has been completed, and the ordinary has determined that the petition is sufficient, may he issue a valid election call. 42 AmJur2d 684, Initiative and Referendum, § 37.

In so holding, we note that the ordinary's failure to comply with this mandatory prerequisite invalidated only the election called for November 21, not the petitions.

■ Appellants enumerate as error the trial court's order of June 14, made on the grounds (a) that the petition did not meet the mandatory requirements of law, and (b) that a valid election could not then be held within 30 days of the filing of the petition, as required by law.

(a) The only requirement imposed by *Code Ann.* § 58-1003 with respect to the petition is that it be "signed by at least 35 percent of the registered voters qualified to vote at the last general election immediately preceding the presentation of the petition." The record discloses no evidence to indicate that this requirement had not been met. To the contrary, the ordinary certified on November 11 that the petitions were sufficient. Moreover, in the second election call issued December 4 the ordinary reaffirmed this finding and stated in particular detail the means by which the signatures had been verified.

"The calling of the election by the 'ordinary', as authorized by the statute, determined at least prima facie that

the petitioners were of the class and were of a sufficient number as required by the statute for the purpose of calling an election . . ." *Vornberg v. Dunn,* 143 Ga. 111 (2) (84 SE 370). In the absence of any evidence to the contrary, the ordinary's election call of December 4 was sufficient to establish that the petitions met the mandatory requirements of law.

(b) While *Code Ann.* § 58-1003 provides that the ordinary "shall call a special election to be held within 30 days from the filing of such petition," we do not regard this as an absolute requirement that the election must be held within that period of time. In cases such as this, where the election is not required by statute to be held on a date certain, and where the election is prevented by a court order, it is permissible to reschedule the election after the expiration of the court's injunction, even though the 30-day period has elapsed.

Appellees argue that the trial court's ruling was correct by reason of our holding in *Davis v. Page,* 217 Ga. 751 (125 SE2d 60), wherein we said: "It is settled in this State and in many other jurisdictions of this country that an election is absolutely void when not held at the proper time and place by persons qualified to hold it. *Code* § 34-3101; *Walker v. Sanford,* 78 Ga. 165 (1 SE 424); *Studstill v. Gary,* 216 Ga. 268 (116 SE2d 213); *Mangum v. Dorn,* 217 Ga. 66 (121 SE2d 145); 18 AmJur 250, § 112; 29 CJS 101, §§ 76-77." This quotation correctly states the rule in a case where the legislature, by the enactment of a statute, has specified a date certain for the holding of an election. For example, in *Davis v. Page,* supra, an election for city officials was void because not held on "the third Saturday in December" as required by the city charter granted by the legislature. Likewise, in *Studstill v. Gary,* supra, the election was set by statute for "the second Wednesday in May," and in *Mangum v. Dorn,* supra, for "the Tuesday after the first Monday in November." In *Walker v. Sanford,* supra, certain ballots were void not because the election was held at the wrong time but because the votes were cast at the wrong place.

The instant case is distinguishable from the aforementioned cases for the reason that here no statute provided a date certain for a special election on the sale and distribution of liquor. Rather, the ordinary is empowered to set a date, and the only restrictions are (a) that it must be set for a time within 30 days from the filing of the petition, and (b) that the ordinary must advertise the election for two weeks preceding the date set. *Code Ann.* § 58-1003.

We are of the opinion that the ordinary sufficiently complied with these statutory requirements when he first called the election for a date within 30 days from the filing of the petitions. It is true that the election set for November 21, if held, would have been void for the reasons stated in Division 2 of this opinion, yet the actual vote was prevented solely by reason of the court's injunctive order. The correct rule in this situation is this: "If there is a statutory time period within which the election must be held and, following litigation, there is no longer time to hold the election within the statutory period, an election may be held after the statutory period has expired." 42 AmJur2d 690, Initiative and Referendum, § 43. To hold otherwise would be to deny to the signers of the petitions, after they had secured the required number of signatures, the right granted by the legislature to have the liquor question submitted to a vote. The purpose of *Code Ann.* § 58-1003 is to permit such elections to be held, not to provide technicalities by which a popular vote may be thwarted.

A somewhat analogous situation was presented in *Ga. R. & Bkg. Co. v. Wright,* 124 Ga. 596, 629 (53 SE 251), wherein the State was enjoined from enforcing a claim for taxes, and the statute of limitation expired while the injunction was in force. The court there stated a rule which is equally applicable to the instant case: "Under such circumstances the plaintiff in the present case can not in equity ask that the State be barred by a limitation of time, when the time involved is that which passed during the period when the State officers were bound to remain passive as a result of a judgment of a court of competent jurisdiction."

The trial court erred in issuing the temporary order of June 14.

■ Because of our ruling in Division 3 of this opinion, it is not necessary to consider appellants' additional enumerations of error.

■ This case is remanded to the trial court for further proceedings not inconsistent with the rulings in this opinion.

*Judgment reversed. All the Justices concur.*