381 A.2d 103

DEER CREEK DRAINAGE BASIN AUTHORITY, a Municipal Corporation, Township of West Deer, Pennsylvania, a Home Rule Municipal Corporation, and Township of Indiana, Pennsylvania, a Municipal Corporation, Petitioners,

v.

COUNTY BOARD OF ELECTIONS OF the COUNTY OF ALLEGHENY, James J. Flaherty, Thomas J. Foerster, and Robert N. Pierce, Jr., in their official capacity as Commissioners of the County of Allegheny and Ex-Officio members of the Board of Elections of Allegheny County, Respondents.

Supreme Court of Pennsylvania.

Argued Sept. 26, 1977.

Decided Nov. 1, 1977.

Dissenting Opinion Dec. 21, 1977.

Louis M. Tarasi, Solicitor for Deer Creek Drainage Basin Authority and Special Counsel for the Townships of West Deer and Indiana, Pittsburgh, for petitioner.

James H. McLean, Asst. County Sol., Martin W. Sheerer, Dillman, Sheerer & Schuchert, Pittsburgh, for respondents.

Maxine Woelfling, Asst. Atty. Gen., Harrisburg, David T. Buente, Pittsburgh, for amicus curiae.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The voters of West Deer Township adopted a home rule charter in May, 1974. This charter, effective January, 1976, authorizes the voters of West Deer to reconsider by way of referendum election any enacted ordinance of the township. Under the charter, upon the filing with the Board of Elections of Allegheny County of a proper referendum petition, any ordinance which is the subject of such an election is suspended. The charter further provides that any ordinance rejected by the voters is automatically repealed.

On July 5, 1977, pursuant to the home rule charter, over 900 voters of West Deer filed with the County Board of Elections a petition calling for a referendum on whether Ordinance No. 100,[1] which initiated the formation of the Deer Creek Drainage Basin Authority, should be repealed. In view of this petition, the Board of Elections plans to place the following question on the November 8, 1977 ballot:

"Shall Ordinance No. 100 of the Township of West Deer enacted October 10, 1974, providing for the establishment with the Township of Indiana of a joint authority known as the Deer Creek Drainage Basin Authority be repealed?"

1. Ordinance No. 100 was enacted pursuant to Section 3 of the Municipal Authorities Act of 1945, Act of May 2, 1945, P.L. 382, 53 P.S. § 303 (1974). Such an ordinance is the first step in the incorporation of a joint Authority. See Part II infra.

On July 11, petitioners Deer Creek Drainage Basin Authority, West Deer Township, and Indiana Township petitioned this Court to prohibit respondents Board of Elections and the Allegheny County Commissioners from placing this question on the November ballot.[2]

This case presents the issue of whether a municipality which is a member of a joint Authority can withdraw from that joint Authority by repealing the ordinance through which the municipality initiated the incorporation of that joint Authority. We hold that it cannot. We hold that the suspension and repeal of Ordinance No. 100 has no legal effect on the township's membership in the joint Authority, and therefore is not a proper subject for referendum. We therefore direct respondent Board of Elections to take all steps necessary to ensure that the question pertaining to the repeal of Ordinance No. 100 is not presented on the November 8, 1977 ballot.[3]

## I

Neither West Deer Township nor Indiana Township has a comprehensive sewage disposal system. Instead, sewage

2. Citizens filing the referendum petition with the County Board of Elections have not entered an appearance. The Department of Environmental Resources of the Commonwealth of Pennsylvania has filed an *amicus* brief supporting the striking of this referendum election. An opposing brief has been filed by "certain citizens" of the Township of West Deer. Respondents have not filed a brief. All relevant facts have been stipulated to by the parties.

3. Petitioners assert that Section 201(2) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, 17 P.S. § 211.201(2) (Supp.1977), confers upon this Court original jurisdiction over their petition for a writ of prohibition. Petitioners contend that the decisions of this Court establish that such a writ may issue to "quasi-judicial" administrative bodies which, they assert, includes the Board of Elections.

We need not decide whether a writ of prohibition may properly issue to the Board of Elections. Petitioners seek to review the determination of the Board of Elections to place the matter on the November, 1977 ballot. This petition for review, see Pa.R.A.P. 1501 et seq., is pending before a court of this Commonwealth, and, in view of the importance of this public election issue, we exercise plenary jurisdiction. Appellate Court Jurisdiction Act of 1970, § 205, 17 P.S. § 211.205 (Supp.1977).

generated at various public buildings in these communities is conveyed to and treated at several sewage treatment plants; sewage generated at private residences is channeled into individual on-site facilities.

For the past several years, the Department of Environmental Resources and the Allegheny County Department of Health have been examining the manner in which West Deer and Indiana Townships process sewage. The agencies have concluded that at least fifteen of the small sewage treatment plants are poorly maintained and are discharging sewage into surface waters in violation of state and federal law. Additionally, the agencies have found that malfunctions at many of the on-site facilities are causing unlawful pollution of groundwater and unlawful discharge of raw sewage onto the surface of the ground throughout the area. The Department of Environmental Resources deems these deficiencies in sewage facilities a threat to the health and safety of the citizens of the affected areas, and by order dated August 29, 1977, has ordered both townships to correct these deficiencies.

In 1972, West Deer and Indiana Townships hired two consulting firms to study the sewage disposal needs of the townships. The firms concluded that the townships would benefit greatly if they worked together in dealing with their sewage problems. Accordingly, on October 21, 1974, West Deer Township and Indiana Township formed the Deer Creek Drainage Basin Authority, to which the Secretary of the Commonwealth has issued a certificate of incorporation.[4] The Authority is authorized to plan, construct, and operate facilities which will collect, transport, and treat sewage generated within the townships.

The sewage disposal plan developed by the Authority was submitted and approved by the Department of Environmental Resources in February, 1976. In March, 1976, the Department of Environmental Resources issued the Authority permits authorizing the construction and operation of the

4. The issuance of the certificate of incorporation is the last step in the incorporation process. See Part II infra.

proposed facilities. To finance the project, the Authority obtained in May, 1976, a grant in excess of $12,000,000 from the Environmental Protection Agency.

## II

The Municipal Authorities Act of 1945, Act of May 2, 1945, P.L. 382, §§ 1 et seq., as amended, 53 P.S. §§ 301–322 (1974 and Supp.1977), grants municipalities the power to organize joint municipal Authorities. Section 3 of the Act, 53 P.S. § 303, provides that the process begins when interested municipalities enact ordinances signifying their intention to organize an Authority. Official notices must then be published in both the legal periodical and a newspaper of general circulation in the county or counties in which the Authority is to be organized. Id.

Following this publication, the municipalities must file with the Secretary of the Commonwealth articles of incorporation and proof of publication of the required notices. Id. Section 3 provides that if the Secretary finds that the articles conform to the requirements set forth in the Act, the Secretary shall approve the articles and issue a certificate of incorporation. The statute provides that the corporate existence of the Authority begins only upon the issuance of such a certificate, and the certificate is conclusive evidence of the Authority's existence.[5]

Section 3.1 of the Act, 53 P.S. § 304, provides that an incorporating municipality may withdraw from the incorporated Authority, but only with the Authority's consent. In no event, however, may a municipality withdraw after the Authority has incurred any obligation. Id.[6] Section 3.1 sets forth the method by which a municipality may withdraw:

5. Section 3 of the Act provides that the Commonwealth may institute proceedings to dissolve the Authority. We have held that this provision excludes others from collaterally attacking the validity of an Authority's incorporation. *Upper Dublin Twp. v. Piszek*, 420 Pa. 536, 218 A.2d 328 (1966). See also *Jonnet v. Municipality of Monroeville*, 31 Cmwlth. 437, 376 A.2d 1015 (1977).

6. Section 3.1 provides:

"Any municipality wishing to withdraw from . . . an existing Authority shall signify its desire by resolution or ordinance. If the Authority shall by resolution express its consent to such withdrawal, . . . the municipal authorities of the withdrawing . . . municipality shall cause a notice of its resolution or ordinance to be published at least one time in the legal periodical of the county or counties in which the Authority is organized and at least one time in a newspaper published and of general circulation in such county or counties."

The statute further provides that the municipal authorities are to file with the Secretary of the Commonwealth an application to withdraw. If the Secretary finds that the application conforms to the terms of the Act, the Secretary is to issue a certificate of withdrawal. Withdrawal becomes effective upon the issuance of this certificate.

Both West Deer and Indiana Townships have, by enacting proper ordinances, initiated the incorporation process as prescribed by the Act. Official notices have been published, and the Secretary has issued a proper certificate of incorporation. The issuance of this certificate has completed the incorporation process, and has allowed the joint Authority to begin its work. Despite this compliance with the Municipal Authorities Act by West Deer Township and Indiana Township, and despite the willingness of petitioners, including Indiana Township, to proceed with this sewage project, a portion of the voters of West Deer, through a home rule charter provision, seek a referendum election on whether the ordinance authorizing the participation of West Deer in the Deer Creek Drainage Basin Authority should be repealed.

"[N]o municipality shall be permitted to withdraw from any Authority after any obligation has been incurred by the Authority." The parties have stipulated that the Authority has incurred "bills" of more than $800,000, including a loan of $350,000 from Pittsburgh National Bank. "Certain citizens" argue that these bills are not "obligations" within the meaning of Section 3.1. The citizens argue that "obligations" should be interpreted to include only "bonded indebtedness." In view of our disposition, we need not reach this issue.

■ Such a referendum has no legal effect, however. Ordinance No. 100 was only the first step in the incorporation process. West Deer Creek Ordinance No. 100 by itself does not give the joint Authority the power to carry out the sewage disposal objectives of both townships; the capacity to carry out these functions derives from the certificate of incorporation. See *Whitemarsh Twp. Authority v. Elwert,* 413 Pa. 329, 196 A.2d 843 (1964); *Simon Appeal,* 408 Pa. 464, 184 A.2d 695 (1962); *Tranter v. Allegheny County Authority,* 316 Pa. 65, 173 A. 289 (1934). Once the joint Authority has been incorporated and West Deer Township has become a member, Ordinance No. 100 has served its initiating function and has no further legal significance. An attempted repeal of Ordinance No. 100 does not alter the township's membership in the joint Authority. Withdrawal proceedings may be initiated only under the procedure set forth in Section 3.1 of the Municipal Authorities Act of 1945, 53 P.S. § 304.

■ Nor can the attempted repeal and suspension of Ordinance No. 100 be viewed as compliance with the statutorily prescribed procedures for withdrawing from the joint Authority. Those proceedings, by the terms of Section 3.1 of the Municipal Authorities Act, may only begin when a municipality "signif[ies] its desire [to withdraw] by resolution or ordinance." This desire may be manifested only by a resolution or ordinance explicitly proposing withdrawal in accordance with the Municipal Authorities Act of 1945. We hold that the proposed repealer referendum has no effect on the continuing membership of West Deer Township in the Deer Creek Drainage Basin Authority.

The Home Rule Charter and Optional Plans Law, Act of April 13, 1972, §§ 101 et seq., as amended, 53 P.S. §§ 1–101—1–1309 (1974 and Supp.1977), supports this conclusion. Though the Home Rule Charter Law grants to municipalities which choose to adopt home rule the power to "repeal ordinances . . . as may be required for the good government" of the home rule municipality, § 304, 53 P.S. § 1–304, such power is not without limitation. Section

302(b) of the Home Rule Charter Law, 53 P.S. § 1–302(b), provides:

"*Limitations on municipal powers*

. . . . .

"(b) No municipality shall . . .

(ii) exercise powers contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable in every part of the Commonwealth . . .."

This section, enacted pursuant to the Legislature's constitutional authority to limit home rule power, Pa.Const. art. IX, § 2, manifests a legislative directive that home rule municipalities are without power to devise their own scheme for withdrawing from a joint Authority. Here, the General Assembly has established a clear set of procedures applicable throughout the Commonwealth which a municipality must follow if it wishes to withdraw from a joint Authority. These statutorily mandated procedures do not provide for withdrawal by one member of a joint Authority suspending or repealing its ordinance expressing its intention to become a member. To hold otherwise would be to enlarge the power of a home rule municipality to withdraw from a joint Authority contrary to the procedures made applicable throughout the Commonwealth set forth in Section 3.1 of the Municipal Authorities Act of 1945, 53 P.S. § 304, and the statutory limitation on home rule power.

This referendum election has raised doubts about the continuing vitality of the Deer Creek Drainage Basin Authority. Not only the possible repeal but also the mere suspension of this ordinance, by operation of the West Deer home rule charter, has hindered the ability of the joint Authority and the Townships to stabilize the cost of this sewage project. The joint Authority has been frustrated in its effort to begin the operation of the project, and both West Deer and Indiana Townships have been unable to meet their sewage disposal needs. Because we conclude that the suspension and repeal of Ordinance No. 100 can have no operative effect on the continued membership of West Deer

Township in the joint Authority, the presence of the proposed referendum on the November 8, 1977 ballot can only add to the current uncertainty. In order to avoid unnecessary voter confusion and the unjustified expenditure of public resources on an inoperative election, and to protect the interests of all parties, injunctive relief is appropriate. See *Committee for New Cobb County Revenue v. Brown,* 228 Ga. 364, 185 S.E.2d 534 (1971); *Housing & Redevelopment Authority of Minneapolis v. City of Minneapolis,* 293 Minn. 227, 198 N.W.2d 531 (1972); *Application of Township of Half Moon,* 81 Misc.2d 157, 364 N.Y.S.2d 299 (1975).[7]

Accordingly we hold that the attempted suspension pursuant to the West Deer home rule charter and possible repeal of Ordinance No. 100 does not affect the membership of West Deer Township in the Deer Creek Drainage Basin Authority, and we hereby direct respondent Board of Elections to take all steps necessary to ensure that the question pertaining to the repeal of Ordinance No. 100 is not presented on the November 8, 1977 ballot.

It is so ordered.

POMEROY, J., dissents and would dismiss the "Petition for Review and Petition for Stay and Writ of Prohibition and Other Relief" for want of jurisdiction in this Court. Opinion to follow.

POMEROY, Justice, dissenting.

In my view, the Court is totally without jurisdiction to entertain the matter which it now decides. I am therefore obliged to dissent.

Undoubtedly motivated by what it perceives as the need for quick resolution of the tangle in which West Deer Township and the Deer Creek Drainage Basin Authority

---

7. Here, we are faced with an attempt to exercise home rule power which presently is causing injury. The consequences of this suspension and possible repeal pose a genuine controversy with immediate effects, not an abstract or hypothetical one where the effects are speculative. Compare *Mt. Lebanon v. County Bd. of Elections,* 470 Pa. 317, 368 A.2d 648 (1977).

find themselves,[1] the Court, in disregard of the basic limitations upon its own power, ignores the rudiments of appellate jurisprudence. In so doing, it unwisely creates a whole new area of original jurisdiction of this Court, with consequences for the future which are difficult to foresee.

The petition which the Court today grants was an original pleading in our Court. It prayed for the issuance of a writ prohibiting the Allegheny County Board of Elections from placing on the ballot to be used in West Deer Township in November, 1977, the referendum question as to repeal of the ordinance establishing the Deer Creek Basin Drainage Authority, and further prohibiting and invalidating such provisions of the Township's home rule charter as might in any manner affect or impair the Authority project.[2] While the predicament in which the Township finds itself invites judicial intervention, and while I agree in the main with Mr. Justice Roberts' opinion on the merits, I am firmly of the opinion that the Court has seriously erred in accepting this case.[3]

1. This matter first came to this Court on July 12, 1977. The pleading then filed in our Court was entitled "Petition for Review and Stay and Writ of Prohibition and Other Relief." The petition alleged dire consequences for the Township if relief were not granted by August 18, 1977. After an answer was filed on July 20, 1977, and a brief was filed by petitioners on July 27, we acted promptly to deny the petition, our order being entered August 5, 1977, without prejudice. The Township then filed a petition for reconsideration, and the Court, on August 17, granted the petition, entered a rule to show cause why relief should not be granted, and directed oral argument at our September Session. Technically, therefore, the Court is today making that rule absolute and granting the requested relief.

2. The petition also prayed for an injunction against those citizens who had petitioned for the referendum "from taking any further action which would frustrate this project." No such citizens were named as respondents or served with the petition.

3. The Court's initial mistake was in granting the petition for reconsideration, for ample opportunity existed to seek and obtain appropriate and timely relief in the court of common pleas. Its second mistake was to its failure to transfer the case to the court of common pleas, which court properly had jurisdiction, pursuant to Section 503(b) of the Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. V, 17 P.S. § 211.503(b) (Supp.1977–78). See also Section 5103(a) of the Judicial Code, Act of July 9, 1976, P.L. 586,

The Township asserts that this Court has jurisdiction of its petition under Sec. 201(2) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, 17 P.S. § 211.201(2) (Supp.1977). That section, declarative of former law, provides:

"The Supreme Court shall have original but not exclusive jurisdiction of:

(1) All cases of habeas corpus;

(2) *All cases of mandamus or prohibition to courts of inferior jurisdiction* ;

(3) All cases of quo warranto as to any officer of statewide jurisdiction." (Emphasis supplied.)

No. 142, 42 Pa.C.S. § 5103(a) (Special Pamphlet, 1976) (not yet effective). These errors have been compounded by our failure, after hearing argument, to dismiss the petition without prejudice to such remedies as might be available in the court of common pleas.

Certain other irregularities in this case compel my comment. As previously noted, see note 2, *supra,* relief was requested against certain unnamed citizens who, so far as the record shows, were never named as respondents or served. Nor was this all. After a letter from the respondent Board of Elections, stating that no answer would be filed to the original petition, was filed in this Court on July 15, certain named citizens appeared with an answer on July 20, although they were not parties of record. These citizens did not purport to intervene in this proceeding, cf. Pa.R.A.P. 1531(b), and they did not purport to stand before this Court as amici curiae pursuant to Pa.R.A.P. 531. Despite the allegation of the unconstitutionality of the Home Rule Charter, nothing in the record indicates that notice was given to the Attorney General, as would seem to be required by the status of the Charter, see note 5 *infra,* and Pa.R.A.P. 521. Nonetheless, the Pennsylvania Department of Environmental Resources somehow got wind of this matter and filed a brief amicus curiae.

The case came before us for argument on September 26, 1977. Despite the allegations by petitioners in their original petition that bonds could not be sold and that the sewer project would fail if relief were not granted by August 18, 1977, a live controversy apparently still existed. It was equally apparent from the papers of record and the briefs that certain factual matters were at best unclear and at worst disputed. Not until October 4, 1977, however, was a Stipulation of Counsel filed to clarify these matters. I think it safe to say that no chancellor in a court of common pleas would have tolerated such sloppy practice or allowed argument on the legal issues here involved to be heard until the factual and procedural posture of the issues and the parties were put in order.

Focusing on clause (2) of this section, it is immediately obvious that no court of "inferior jurisdiction" is here involved, for the action was commenced in this Court. There is some case law to the effect that a writ of prohibition may issue to administrative tribunals which, although not courts, exercise quasi-judicial functions. See *Carpentertown Coal & Coke Co. v. Laird,* 360 Pa. 94, 101, 61 A.2d 426 (1948); *Akron Borough v. Pennsylvania Public Utility Commission,* 453 Pa. 554, 560–63, 310 A.2d 271 (1973); *Bethlehem Mines Corp. v. Commonwealth,* 11 Pa.Cmwlth. 375, 313 A.2d 790 (1973), *rev'd on other grounds,* 462 Pa. 207, 340 A.2d 435 (1975). But no attempt is made by petitioner to demonstrate that the Allegheny County Board of Elections is such a body; in my opinion, it is not, and this Court has so held. *Shroyer v. Thomas,* 368 Pa. 70, 81 A.2d 435 (1961). A board of elections, it has been well said, "does not sit as a quasi-judicial body adjudicating contending forces as it wishes, but rather as an executive agency to carry out legislative mandates. Its duties are ministerial only." *Perles v. Hoffman,* 419 Pa. 400, 406, 213 A.2d 781, 786 (1965) (Cohen, J., concurring). See also, *Altoona Mayor Substitute Nomination Case,* 413 Pa. 305, 315, 196 A.2d 371, 376 n. 2 (1964) (Cohen, J., dissenting).

The Allegheny County Board of Elections performs a necessary and important function as a part of the democratic process in our form of government, but it has nothing to do with the substantive questions to be put to the voters on a particular ballot.[4] If the law prescribes that a question

4. The source of the authority and structure of county boards of elections, including the Allegheny County Board of Elections, is the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, art. III, § 301 *et seq., as amended,* 25 P.S. § 2641 *et seq.* (1963). ("Election Code"). The Election Code mandates the existence of such boards in and for each county of the Commonwealth, with jurisdiction over the conduct and form of primary and general elections in each county. Section 302 of the Election Code delineates the "powers and duties of county boards" seriatim, in paragraphs (a) through (*o*). With the exception of paragraph (*o*), these deal with the mechanics of specific election procedures; paragraph (*o*) is a catch-all authorization to county boards to "perform such other duties as may be prescribed by law." 25 P.S. § 2642(*o*) (1963). It is this latter provision, read in

may be placed on the ballot, the county board must perform that duty.

Under the Constitution of 1968, a municipality which has adopted a home rule charter [5] may properly place such matters as concern the citizens of the municipality before the voters. The challenged referendum on West Deer's Ordinance 100 in the case at bar is an example of this process. Section C–1192 of the Home Rule Charter of West Deer provides:

"2.  Initiative and Referendum Procedures:

Initiative and Referendum procedures shall be initiated upon petition signed by seven (7%) percent of the registered electors of the municipality at large. Every initiative and referendum petition shall contain or have attached thereto through their circulation the full text of the ordinance proposed or sought to be reconsidered.

\*     \*     \*     \*     \*     \*

An initiative or referendum petition shall be tendered for filing to the County Board of Elections. No signature shall be counted as valid which is dated more than sixty (60) days prior to the date the petition is tendered for filing. Upon tender to the County Board of Elections, the petition shall be available for examination by any interested person. Within fifteen (15) days after tender of the petition, the County Board of Elections shall have authori-

context with the provisions of § C–1197 of the Home Rule Charter of West Deer, discussed *infra,* that provides the authorization to the Allegheny County Board of Elections to place the challenged referendum on the township ballot.

5.  Art. 9, § 2 of the Constitution of Pennsylvania provides for this form of local government as follows:

"Municipalities shall have the right and power to frame and adopt home rule charters.   .  .  .   A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time."

Such charters, properly adopted, have the force and status of an enactment of the legislature. *Addison Case,* 385 Pa. 48, 57, 122 A.2d 272 (1956). See also *Citizens Committee to Recall Rizzo v. Board of Elections of Philadelphia,* 470 Pa. 1, 25, 367 A.2d 232, 244 (1976) (opinion of Jones, C. J.).

ty to pass upon the validity of the petition and the validity and number of signatures required thereon. The decision of the Board of Elections shall be subject to immediate review on appeal to the Court of Common Pleas."

This section has the force and status of an enactment of the legislature. Therefore, once the Board of Elections had determined that the proposed referendum met the procedural requirements of Section C–1192—a finding not challenged here—it became the duty of the Board to place the referendum question before the voters of West Deer. In so doing, the Board clearly acted within the scope of its responsibilities and discretion; hence no writ of prohibition or mandamus could be issued against it for exceeding its authority or otherwise acting illegally. Compare *Citizens Committee to Recall Rizzo v. Board of Elections of Philadelphia*, 470 Pa. 1, 5–16, 74–81, 87–102, 367 A.2d 232 (1976) (opinion of Jones, C. J., and opinions of Pomeroy and Roberts, JJ., dissenting). The proper remedy available to petitioners to challenge the substantive validity of the referendum petition, as set forth clearly in the above quoted section of West Deer's Home Rule Charter, would have been an action in the Court of Common Pleas of Allegheny County.

In support of its exercise of original jurisdiction in this case the Court does not hold that the Board of Elections is a quasi-judicial body and that, as such, it is subject to peremptory control by issuance of writs of prohibition. Indeed, the majority by-passes this question altogether, stating that there is no need to decide "whether a writ of prohibition may properly issue to the Board of Elections." Opinion of the Court, *ante*, at 494, n.3. The Court engages, instead, in what can best be described as "operation bootstrap." It declares, in wholly conclusory fashion, "Petitioners seek to review the determination of the Board of Elections [6] to place

6. As above stated, the Board of Elections made no such determination; it was merely preparing, as was its duty, to place the question on the ballot pursuant to instructions from the Township acting under its home rule charter. There has been no action whatever of any tribunal, whether a court or an agency of government, which has been taken in this matter or which we are asked to review. All that

the matter on the November, 1977 ballot. This petition for review, see Pa.R.A.P. 1501 *et seq.*, is pending before a court of this Commonwealth, and, in view of the importance of this public election issue, we exercise plenary jurisdiction. Appellate Court Jurisdiction Act of 1970, § 205, 17 P.S. § 211.205 (Supp.1977)." *Id.*, at 494, n.3. The cited section of the Appellate Court Jurisdiction Act, Section 205, provides that the Court may, "on its own motion or on petition of any party, in any matter pending before any court . . of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done."

The first observation to be made with regard to the Court's stated reasons for entertaining this case is that it is a sophistry to suggest that the phrase in Section 205, *supra*, "pending before any court," was meant to include the Supreme Court. If a matter is properly pending in this Court to begin with, as part of our original jurisdiction as conferred by the legislature, see section 201 of the Appellate Court Jurisdiction Act of 1970, *supra*, 17 P.S. § 211.201, there is surely no need for us to "*assume* plenary jurisdiction"; we already have it. The words of Section 205 which immediately follow, *viz.*, that this assumption may be made "at any stage" of such pending matter, make it clear that the pendency referred to is in any of the other courts in the judicial system of the Commonwealth, over all of which this Court, as the repository of "the supreme judicial power of the Commonwealth," Pa.Const. art. V, § 2(a), "shall exercise general supervisory and administrative authority," *id.* 10(a); otherwise there would be no need to refer to "stage."

The broad powers with which this Court is endowed under the Constitution of 1968 are substantially declaratory of the

has occurred is that citizens of the Township, acting under their home rule charter, have petitioned the Board of Elections to place the question of repeal of an ordinance on the ballot. The real purpose of this action in this Court, as the prayer of the petition makes clear, is to obtain a declaration of the invalidity of the home rule charter and an injunction against proceeding with the referendum.

so-called "King's Bench" powers which this Court has always enjoyed by virtue of the basic judiciary act to which the Court traces its origin, the Act of May 22, 1722, Section 13, 1 Sm.L. 131. But broad as those powers are, they have never been deemed to include the exercise of *original* jurisdiction in any case which a party decides to bring to us.[7] Until today, cases where our power to assume plenary jurisdiction has been exercised have involved actions pending at one stage or another before another court, whether a court of original jurisdiction or an intermediate appellate court and whether shortly after commencement of suit or after some adjudicatory action in the lower court. The cases under Section 205 that my research has disclosed, together with the action taken in the lower court, are set forth in the margin.[8]

7. In an earlier era the Supreme Court did act as a nisi prius court as well as an appellate court. That period ended in 1874 when the nisi prius jurisdiction was abolished. Pa.Const. of 1874, art. V, § 21. Section 201 of the Appellate Court Jurisdiction Act is the last vestige of such original jurisdiction. See generally Surrency, *The Development of the Appellate Function: The Pennsylvania Experience*, 20 Am.J.Legal Hist. 173, 181–87 (1976).

8. *Bigley v. Flaherty*, 472 Pa. 253, 372 A.2d 408 (1977) (election case; decree in equity entered by court of common pleas); *Citizens Committee to Recall Rizzo v. Board of Elections of the City and County of Philadelphia*, 470 Pa. 1, 367 A.2d 232 (1976) (writ of mandamus issued by court of common pleas); *Hilton v. State Employees Retirement Board*, 470 Pa. 301, 302 n.1, 368 A.2d 640 (1977) (motion for summary judgment denied by Commonwealth Court); *Barbieri v. Shapp*, 470 Pa. 463, 368 A.2d 721 (1977) (petition for review filed in Commonwealth Court); *Commonwealth v. Reinhart*, 466 Pa. 591, 353 A.2d 848 (1976) (*nolle prosequi* allowed to be entered by court of common pleas); *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897 (1975) (action in equity and for declaratory relief, alleging unconstitutionality of no-fault legislation, begun in Commonwealth Court); *Commonwealth v. Webster*, 462 Pa. 125, 337 A.2d 914 (1975) (habeas corpus petition denied in court of common pleas); *Tosto v. Pennsylvania Nursing Home Loan Agency*, 460 Pa. 1, 331 A.2d 198 (1975) (taxpayers' suit to enjoin operation of statute filed in Commonwealth Court); *Frame v. Sutherland*, 459 Pa. 177, 327 A.2d 623 (1974) (quo warranto actions commenced in Commonwealth Court); *Commonwealth v. Ryan*, 459 Pa. 148, 327 A.2d 351 (1974) (judgments of sentence for indirect criminal contempt entered by court of common pleas); *Johnson v. Pennsylvania Housing Finance Agency*, 453 Pa. 329, 309 A.2d 528 (1973) (suit in equity commenced in Commonwealth Court to restrain operation of allegedly unconstitutional statute); *Commonwealth ex rel. Benedict v. Cliff*, 451 Pa. 427, 304 A.2d

The second thing to be noted as to the Court's explanation for deciding this case is that, while purporting not to "decide whether a writ of prohibition may properly issue to the Board of Elections," opinion of the Court, *ante* at n.3, the Court does in fact issue an order which expressly prohibits the Board from acting. Its mandate states:

158 (1973) (habeas corpus petitions denied in court of common pleas); *Flaherty v. Port Authority of Allegheny County*, 450 Pa. 509, 299 A.2d 613 (1973) (decree nisi granting preliminary injunction entered by court of common pleas); *Commonwealth v. Truesdale*, 449 Pa. 325, 296 A.2d 829 (1972) (writ of habeas corpus issued by court of common pleas); *Wieskerger Appeal*, 447 Pa. 418, 420, 290 A.2d 108 (1972) (order affirming recount of ballots entered by court of common pleas); *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971) (order in mandamus entered by court of common pleas).

In one case, the Court seems to have assumed plenary jurisdiction without the commencement of any proceedings in a lower court. *Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 281 A.2d 57 (1971). In *Creamer*, however, there were multiple actions filed in this Court. As was noted at the time:

"The question in these cases arose either by a writ of mandamus or by quo warranto or by petition to this Court to take original and plenary jurisdiction, which we granted. The different status of the parties or the form of relief sought, justified and made appropriate the form of action chosen by each party." *Id.*, 443 Pa. at 497, 281 A.2d at 63 (opinion of Bell, C. J.).

Since the original jurisdiction of this Court was properly invoked in a number of the actions involved in *Creamer*, it was sensible, in the interest of judicial economy, to join the ancillary actions which invoked our plenary jurisdiction. Compare Fed.R.Civ.P. 18(a); *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). No such situation is present in this case.

In other cases, actions not apparently within the enumerated original jurisdiction of this Court have been properly brought here pursuant to our supervisory role over other courts conferred by Section 13 of the Act of May 22, 1722, 1 Sm.L. 131 (see *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 99, 61 A.2d 426 (1948)), and now recognized in Article V, Section 10(a) of the Constitution. See *President Judge Determination Cases*, 420 Pa. 243, 216 A.2d 326 (1966) (original action in Supreme Court to determine priority of commission of common pleas judges). Compare *Smith v. Gallagher*, 408 Pa. 551, 573, 185 A.2d 135 (1962); *Commonwealth v. Onda*, 376 Pa. 405, 103 A.2d 90 (1954); *Commonwealth v. Ragone*, 317 Pa. 113, 126–28, 176 A. 454 (1935). See also *Commonwealth v. Keenan*, 347 Pa. 574, 584 n.5, 33 A.2d 244 (1943). That the instant case, which has not been in any other court and concerns no lower court judge, is

"[W]e hereby direct respondent Board of Elections to take all steps necessary to ensure that the question pertaining to the repeal of Ordinance No. 100 is not presented on the November 8, 1977 ballot."

The couching of this order in terms which appear to be affirmative cannot disguise the reality that the Board is being prohibited by this Court from acting.[9] In so doing the Court ignores the self-imposed and rigorously observed limitations on our power to utilize this extraordinary and drastic remedy. See, e. g., *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 61 A.2d 426 (1948); *Pirillo v. Takiff*, 462 Pa. 511, 519–20, 341 A.2d 896 (1975); *Commonwealth ex rel. Specter v. Shiomos*, 457 Pa. 104, 107–09, 320 A.2d 134 (1974); *id.* 457 Pa. at 110 n.1, 320 A.2d 134 (Pomeroy, J., concurring); *Kremer v. Shoyer*, 453 Pa. 22, 27–28, 311 A.2d 600 (1973); *id.* 457 Pa. at 29–33, 311 A.2d 600 (Pomeroy, J., concurring). Cf. *Borough of Akron v. Pennsylvania P.U.C.*, 453 Pa. 554, 560–63, 310 A.2d 271 (1973). *See generally* Comment, *The Writ of Prohibition in Pennsylvania*, 80 Dick.L.Rev. 472 (1976). It has been accurately stated by a recent commentator that "[i]n the vast majority of cases . . . four basic requirements must be met before a court can issue a writ of prohibition. First, the court or tribunal against which the writ is directed must be exercising judicial or quasi-judicial power. Second, the exercise of this power must be an extension of jurisdiction unauthorized by law. Third, the exercise of power must threaten injury to the petitioner. Last, the threatened injury must be one for which no other adequate remedy exists." Comment, *supra*, at 494. In the case at bar there is doubtless a threatened injury to petitioner, but none of the other three requirements for a writ of prohibition is present.

Moreover, if we were to consider the court's order in positive terms, as a writ of mandamus, it is subject to the

not within this Court's King's Bench powers is too plain for discussion.

**9.** Compare Lord Eldon's "prohibitory" decree in *Lane v. Newdigate*, 10 Ves.Jr. 192, 32 Eng.Rep. 818 (Ch. 1804), discussed in *Developments in the Law—Injunctions*, 78 Harv.L.Rev. 994, 1061 (1965).

same criticisms as have been voiced above relative to prohibition, for mandamus in our court is also an extraordinary remedy directed only to inferior courts and tribunals. Appellate Court Jurisdiction Act, *supra*, § 201(2), 17 P.S. § 211.201(2) (Supp. 1977–78). Compare Comment, *supra*, 80 Dick.L.Rev. at 486–87. Mr. Justice Jackson, speaking for the Supreme Court of the United States, put the proposition succinctly, albeit in a different context, in *Ex parte Fahey*, 332 U.S. 258, 259–60, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041, 2043 (1947):

> "Mandamus [and] prohibition . . . are drastic and extraordinary remedies. We do not doubt power in a proper case to issue such writs. But . . . [t]hese remedies should be resorted to only where appeal is a clearly inadequate remedy. We are unwilling to utilize them as substitutes for appeals. As extraordinary remedies, they are reserved for really extraordinary causes."

Since it is plain that prohibition or mandamus cannot issue from this Court to the Board of Elections for its action in this case, the only proper way to characterize the Court's mandate is as a decree in equity. Yet a reading of Section 201 of the Appellate Court Jurisdiction Act shows that such a decree simply is not within this Court's power to grant as a matter of its original jurisdiction. Such relief can come in the first instance only pursuant to an action in the court of common pleas, as contemplated by the Home Rule Charter of West Deer.

There can be no doubt that the time-honored extraordinary writs are and should remain an integral part of our appellate judicial process; properly employed, they serve a sound jurisprudential purpose. See, R. Leflar, *Internal Operating Procedures of Appellate Courts* 59–60 (1976). Unfortunately, however, the taking of this case represents a clear distortion of our law and historic tradition in Pennsylvania, for no lower court or tribunal has exceeded its jurisdiction or taken any egregiously offensive action; indeed, the basic trouble here is that no lower tribunal has been involved at all. The petitioners have mistaken their forum

and their remedy, and presume to seek instant and final relief in this Court by invoking original jurisdiction we do not have. For reasons nowhere adequately explicated, the Court acquiesces, and grants the instant relief. This action is the more startling, for we have been chary not only of applications which invoke our legitimate original jurisdiction, but have been seeking to limit the scope and number of appeals which we must hear as of right, and to become increasingly a "certiorari" court. The reason for this attitude, of course, if not only sound appellate jurisprudence, but also the pragmatic recognition of the increasingly burdensome case load with which this Court (as well as our sister appellate courts in Pennsylvania) must cope.[10]

The Court's assumption of jurisdiction in this case, which I hope is but a temporary aberration, does nothing to aid the definition of our proper role, and seems to reflect the unfortunate *hubris* that Mr. Justice Jackson had in mind when he remarked that a decision "by a higher court is not proof that justice is thereby better done. . . . We are not final because we are infallible, but we are infallible only because we are final." *Brown v. Allen,* 344 U.S. 443, 540, 73 S.Ct. 397, 427, 97 L.Ed. 469, 533 (1953) (opinion concurring in

10. This phenomenon of the staggering case load is not unique to Pennsylvania; it is nationwide. Professor Leflar notes the symptoms and suggests some causes of the problem:

"The current 'law explosion' in the United States is producing many more filings in trial courts. If the traditional proportion of appeals were expected, the caseloads of appellate courts would increase by the same percentage as the dockets of the trial courts. The current proportion of appeals, however, is even greater. A newly popular idea that appeal is a usual part of the judicial process moves more cases into the higher courts. In an earlier day, most citizens considered appeals to constitute an esoteric upper level in litigation, to be employed only when large amounts of money, serious injustices, or bitter disputes were involved. Today nearly every loser at the lower level thinks about appealing."

Leflar, *supra,* at 7–8. *See also* P. Carrington, D. Meador & M. Rosenberg, Justice on Appeal 4–7; D. Meador, Appellate Courts: Staff and Process in the Crisis of Volume 7–9 (1974); Carrington, *Crowded Dockets and the Courts of Appeals: The Threat to the Function of Review and the National Law,* 82 Harv.L.Rev. 542 (1969).

the result). Compare Wright, *The Doubtful Omniscience of Appellate Courts*, 41 Minn.L.Rev. 751 (1957).

I dissent and would dismiss this "Petition for Review and Petition for Stay and Writ of Prohibition and Other Relief" for want of jurisdiction in this Court.[11]

---

**11.** As indicated in note 3, *supra*, such a disposition should be without prejudice to pursuing appropriate remedies in the court of common pleas.